MILDRED R. CORREIA, administratrix, vs. THE FIRESTONE
TIRE & RUBBER COMPANY.

Suffolk.   October 5, 1982. — March 9, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

Negligence, Contributory, Comparative.  Joint Tortfeasors.  Contribu-
tion.  Workmen's Compensation Act, Recovery against third person.
Warranty.  Uniform Commercial Code, Warranty.

Where an employer had paid benefits under the Workmen's Compensa-
tion Act for the death of an employee injured in the course of his
employment, any negligence of the employer could not be considered
either under the comparative negligence statute, G.L. c. 231, § 85, or
under the contribution statute, G.L. c. 231B, § 1, to reduce the
amount of recovery by the representative of the employee's estate in an
action against a third-party tortfeasor. [346-352]
In an action against a third-party tortfeasor by the representative of the
estate of an employee killed in the course of his employment, evidence
of any negligence by the employer would be material only if such
negligence, either alone or combined with the negligence of the
employee, was the sole proximate cause of the employee's injuries.
[352]
The comparative negligence statute, G.L. c. 231, § 85, is not a defense
in an action under G.L. c. 106, § 2-314, for breach of warranty
resulting in personal injury or wrongful death. [353-357]

QUESTIONS OF LAW certified to the Supreme Judicial
Court by the United States District Court for the District of
Massachusetts.

Robert V. Costello for the plaintiff.
Reginald H. Howe (Turner C. Graybill with him) for the
defendant.

NOLAN, J.  This case comes before the court on certifica-
tion from the United States District Court for the District of
Massachusetts.  The court has certified to us five questions

involving Massachusetts tort and warranty law. See S.J.C. Rule 1:03, § 1, as appearing in 382 Mass. 700 (1981).

This is an action for wrongful death under G.L. c. 229, § 2, commenced in the United States District Court. See 28 U.S.C. § 1332 (1976). Mildred R. Correia, as administratrix of the estate of her husband, Alfred R. Correia, brought suit against The Firestone Tire & Rubber Company (Firestone). Alfred Correia was killed on November 10, 1978, in an accident arising out of and in the course of his employment as truck driver for Concord Steel Corporation (Concord Steel).[1] Mrs. Correia filed a complaint in September, 1979.[2] Since Mrs. Correia applied for and received death benefits under G.L. c. 152, the Workmen's Compensation Act, any recovery is subject to the provisions of § 15.

Discovery has been completed and the case is ready for trial. Firestone requested certain jury instructions on negligence and warranty that presented issues of law for which the trial judge found no controlling precedent in the decisions of this court. He believed that an authoritative answer "would materially advance the ultimate termination of this litigation consistently with Massachusetts law." In certifying these questions to this court, he summarized the parties' allegations as follows: "The plaintiff alleges the following facts as to which there is no dispute: At the time of the accident, Mr. Correia was driving a tractor-trailer rig owned by Concord Steel from its plant in Everett to its plant in Methuen. The trailer was loaded with several large, one-inch thick, steel plates for ultimate delivery to Concord Steel's customers. While the truck was proceeding north on Route 93 in Andover, the right front tire of the tractor blew out. The rig, which was in the center lane at the time of the

---

[1]Concord Steel has brought suit against Firestone for damage to the truck. This action was consolidated for trial with the wrongful death action. Concord Steel is not a party to the proceeding before us.

[2]The defendant's brief states that the complaint contained one count for negligence and one for breach of implied warranty.

blowout, veered to the right, went across the right travel lane, then through the right guardrail and down an embankment. In the course of the accident, Mr. Correia was killed. His body was found on the ground approximately ten feet from the tractor.

"The plaintiff further alleges that the tire which blew out was a Firestone tire, and that the blowout was caused by negligence or breach of warranty by Firestone.

"Firestone denies any negligence or breach of warranty and alleges contributory negligence by Mr. Correia, particularly with respect to his failure to control the rig after the blowout, his failure to properly inspect and maintain the rig and its tires, and his failure to wear a seatbelt.

"Additionally, Firestone alleges that the accident was caused in whole or in part by negligence of Concord Steel other than negligence of Mr. Correia . . . .

"To summarize, Firestone contends that in addition to any negligence of Mr. Correia, Concord Steel was negligent in at least three major respects: (1) it failed to properly service and maintain the tractor's steering system; (2) it failed to properly install or maintain the pin and plate which held the trailer to the tractor's so-called 'fifth wheel;' and (3) it failed to properly secure the load of steel plates to the trailer . . .[3]

---

[3] With respect to the first point, Firestone expected to call an expert witness who would testify that in his opinion excessive free play in the tractor's steering system caused the tractor to veer sharply to the right after the blowout. With respect to the second point, Firestone also expected to call an expert witness who would testify that in his opinion the pin and plate joining the tractor to the trailer were not properly welded and that the major damage to the tractor, and most probably the fatal injuries to Correia, were caused by the trailer's becoming detached from the tractor and running over it from behind. With respect to the third point, Firestone would introduce photographs of the accident scene and the State police accident report in support of its contention that, if Correia's fatal injuries were not caused by the tractor's being struck from behind by the trailer, they were caused by his being struck by one of the steel plates which came loose during the accident. The State police report indicated that a steel plate landed on top of Correia. Firestone also contended that Concord Steel violated Federal regulations concerning the mounting of

"The parties agree that the applicable state law is that of Massachusetts.

"Firestone, recognizing that it cannot seek contribution from Concord Steel (*Liberty Mutual Insurance Co.* v. *Westerlind,* 374 Mass. 524 (1978)), has by a motion in limine requested this Court to give one of four alternative jury instructions on the negligence count. Essentially, Firestone requests this court to determine what effect, if any, should be given under the negligence count to any negligence of Concord Steel (other than negligence of Mr. Correia) . . . .

"Firestone has also requested this court to determine what effect, if any, should be given under the breach of warranty count to any negligence of Mr. Correia, or to any negligence of Concord Steel (other than negligence of Mr. Correia). In this regard, Firestone contends that this court should apply the comparative negligence statute to the breach of warranty count in the same manner that it applies that statute to the negligence count, i.e., that it should treat M.G.L. c. 231, § 85, as a comparative 'fault' statute, or, alternatively, that this court should apply common law contributory negligence principles to the breach of warranty count.

"Plaintiff contends that (1) the jury should be instructed that alleged negligence attributable to Concord Steel (other than alleged negligence of Mr. Correia) is irrelevant to the liability of Firestone and (2) that all proffered evidence (and opening statements regarding evidence) that is relevant only to such alleged negligence of Concord Steel and not to other issues in the case should be excluded."

The judge, pursuant to S.J.C. Rule 1:03, certified the following questions to this court.

---

the trailer's coupling device, the securing of the cargo, and the maintenance of the motor vehicle. Firestone further contended that Correia's and thus Concord Steel's operation of the tractor and trailer on the day of the accident violated Federal regulations concerning the inspection of the steering mechanism, tires, and coupling devices prior to driving, the use of seatbelts, and the operation of an unsafe vehicle.

QUESTION ONE

"If Concord Steel's negligence (other than negligence of Mr. Correia) was a proximate cause of Mr. Correia's death, should that negligence be given effect in the negligence count in this action in the manner described in any of Firestone's four alternative jury instructions?" We answer, "No."

In *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524 (1978), we held that a third-party tortfeasor has no right of contribution (or indemnity, absent an express or implied contract) from an insured or self-insured employer whose negligence contributed to the employee's injury, where the employee had collected workmen's compensation benefits. Our holding was premised on the fact that, under G.L. c. 152, § 23, an employee who accepts compensation benefits from an employer releases that employer from all claims of liability that the employee might have as a result of his accident. Since the employer could not be liable to the employee, the employer could not be liable for contribution under G.L. c. 231B, § 1 *(a),* which requires that "the potential contributor be directly liable to the plaintiff." *Id.* at 526. The great majority of courts that have considered this question have denied contribution. 2A A. Larson, Workmen's Compensation § 76.20 (1982). We also recognized in *Westerlind* that strong "policy arguments exist on both sides of the issue" and that "[s]uch conflicting policy considerations are best resolved in the Legislature where the resolution can be based on full consideration of the competing interests and the ramifications involved with any change of the legislative scheme of G.L. c. 152." *Id.* at 527.

The jury instructions requested by Firestone[4] implicate the same statutory framework and policy considerations. In

---

[4] The requested instructions are as follows:

"*Jury Instruction Alternative No. 1:* You will first determine the percentages, if any, by which the negligence of Alfred Correia, Concord Steel Corporation and The Firestone Tire & Rubber Company con-

essence, Firestone's proffered jury instructions seek an "equitable" solution to the supposed inequity of the *Wester-*

tributed to the accident. The total negligence must equal one hundred percent, but you need not find negligence on the part of any particular party. If you find that the negligence of Correia and Concord Steel does not exceed the negligence of Firestone, you shall determine the plaintiff's total damages. If you find that Correia's negligence contributed to the accident, you shall diminish the plaintiff's damage by the percentage of Correia's negligence. If you find that the negligence of Concord Steel contributed to the accident, you shall diminish the plaintiff's total damages by the percentage of Concord Steel's negligence, combined with the negligence of Correia, if any. The resulting amount shall be the damages awarded the plaintiff.

"*Jury Instruction Alternative 2:* You will first determine the percentages, if any, by which the negligence of Alfred Correia, Concord Steel Corporation and The Firestone Tire & Rubber Company contributed to the accident. The total negligence must equal one hundred percent, but you need not find negligence on the part of any particular party. If you find that the negligence of Correia does not exceed the negligence of Firestone, you shall determine the plaintiff's total damages. If you find that the negligence of Concord Steel contributed to the accident, then you shall diminish the plaintiff's total damages by the ratio which the negligence of Correia bears to the total negligence of Correia and Firestone.

"For example, if you find that Correia and Firestone are each 30 percent negligent and Concord Steel is 40 percent negligent, you would reduce the plaintiff's damages by one-half, *i.e.,* 30 percent divided by 60 percent equals ½.

"*Jury Instruction Alternative No. 3:* You will first determine the percentages, if any, by which the negligence of Alfred Correia, Concord Steel Corporation and The Firestone Tire & Rubber Company contributed to the accident. The total negligence must equal one hundred percent, but you need not find negligence on the part of any particular party. If you find that the negligence of Correia does not exceed the negligence of Firestone, you shall determine the plaintiff's total damages. If you find that the negligence of Correia contributed to the accident, you will first diminish the plaintiff's total damages by the percentage by which Correia's negligence contributed to the accident. If you find that the negligence of Concord Steel contributed to the accident, the damages awarded the plaintiff shall be one-half of the resulting amount.

"*Jury Instruction Alternative No. 4:* You will first determine the percentages, if any, by which the negligence of Alfred Correia, Concord Steel Corporation and The Firestone Tire & Rubber Company con-

*lind* rule[5] as perceived in light of the comparative negligence[6] and contribution statutes.[7]  Similar solutions have

tributed to the accident.  The total negligence must equal one hundred percent, but you need not find negligence on the part of any particular party.  If you find that the negligence of Correia does not exceed the negligence of Firestone, you shall determine the plaintiff's total damages.  If you find that the negligence of Correia contributed to the accident, you shall diminish the plaintiff's total damages by the percentage of Correia's negligence.  If you find that Concord Steel's negligence also contributed to the accident, you will further reduce the plaintiff's damages by $_____ [amount of workmen's compensation paid]."

Before this court, Firestone has indicated that use of the second jury instruction would not "by itself satisfactorily address the problem of the negligent employer . . . . Thus its use in the workmen's compensation context is not appropriate unless it is somehow combined with jury instruction alternative no. 1, no. 2 [*sic*] or no. 3."

[5]As an example of the unfairness of the rule expressed in *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524 (1978), Firestone presents the scenario of a third party whose negligence contributed only one percent to the employee's damages nevertheless having to pay full damages in the event that the employee's negligence was no greater than that of the third party.  While we consider such a result harsh, we can conceive of instances where, under the first three instructions suggested by Firestone, an employee whose negligence was minimal or nonexistent would be denied recovery or receive substantially less than he would have had he not received workmen's compensation.  Moreover, we are not so naive as to fail to acknowledge that one of the practical effects of *Westerlind* is to favor one insurance company (the employer's carrier) over another insurance company (the third-party's carrier).

[6]General Laws c. 231, § 85, as appearing in St. 1973, c. 1123, § 1, provides in pertinent part: "Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the total amount of negligence attributable to the person or persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.  In determining by what amount the plaintiff's damages shall be diminished in such a case, the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought.  The combined total of the plaintiff's negligence taken together with all of the negligence of all defendants shall equal one hundred per cent."

[7]General Laws c. 231B, inserted by St. 1962, c. 730, § 1, provides in pertinent part:

"(*a*)  Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or prop-

been proposed without success in a number of other States where the workmen's compensation statutes have been construed to bar contribution against the employer. See 2A A. Larson, Workmen's Compensation § 76.20, at 14-571, 14-594 - 14-595 & n.27 (1982). A common ground for the decisions denying equitable solutions, aside from difficulties with the solutions themselves, has been that the workmen's compensation laws are economic regulations representing the Legislature's balance of competing societal interests and that the courts have no place in reshaping public policy in the face of such comprehensive legislation. See *State* v. *Wien Air Alaska, Inc.*, 619 P.2d 719 (Alaska 1980); *Arctic Structures, Inc.* v. *Wedmore*, 605 P.2d 426 (Alaska 1979); *Mulder* v. *Acme-Cleveland Corp.*, 95 Wis. 2d 173 (1980). We accepted this rationale in *Westerlind, supra* at 527. Although that decision, strictly speaking, rested on a legal question, we think its rationale extends to preclude our making any decision here in the name of equity which would undercut the legislative scheme to which we there

---

erty, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution shall exist only in favor of a joint tortfeasor, hereinafter called tortfeasor, who has paid more than his pro rata share of the common liability, and his total recovery shall be limited to the amount paid by him in excess of his pro rata share. No tortfeasor shall be compelled to make contribution beyond his own pro rata share of the entire liability.

"(c) A tortfeasor who enters into a settlement with a claimant shall not be entitled to recover contribution from another tortfeasor in respect to any amount paid in a settlement which is in excess of what was reasonable.

"(d) A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, shall be subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision shall not limit or impair any right of subrogation arising from any other relationship.

"(e) This chapter shall not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee shall be for indemnity and not contribution, and the indemnity obligor shall not be entitled to contribution from the obligee for any portion of his indemnity obligation."

deferred. Workmen's compensation is not an area so "'long left to the common law [that] change may . . . come about by the same medium of development.'" *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516 (1980). The first workmen's compensation law in this Commonwealth was enacted in 1911. St. 1911, c. 751, II, §§ 1-22. "It was not a mere amendment or modification of the common law, but the establishment of previously unknown obligations, compensations, and procedures, all differing from and in place of those afforded by the common law" (footnote omitted). L. Locke, Workmen's Compensation § 1 (2d ed. 1981). The competing interests have been rebalanced and the law amended numerous times since 1911. Any inequities in the present scheme must be resolved by the Legislature. See *Ferrari* v. *Toto*, 383 Mass. 36, 38-39 (1981).

This conclusion is not altered by the existence of the comparative negligence statute, G. L. c. 231, § 85, and the contribution statute, G. L. c. 231B, § 1. These statutes did not create the liability of the third party, which is of common law origin, and there is no indication that they were intended to destroy it. Taken together, these statutes make clear "that the negligence of a plaintiff is to be compared with the total negligence of all the defendants, all of whom are liable to the plaintiff, with contribution among the joint tortfeasors on a pro rata basis . . . ." *Graci* v. *Damon*, 6 Mass. App. Ct. 160, 170, *S.C.*, 376 Mass. 931 (1978). The Legislature's choice, by its enactment and various amendments to the Workmen's Compensation Act, to withdraw from the pool of available defendants and contributors any employer who pays compensation benefits, in no way qualified the right of the injured employee to recover against the third party.[8] See *Becker* v. *Eastern Mass. St. Ry.*, 279 Mass.

---

[8] We note that the Legislature has statutorily qualified the right of the employee to receive benefits from the employer in the case of serious and wilful misconduct. General Laws c. 152, § 27, provides that an employee who is injured as the result of his own serious and wilful misconduct shall receive no compensation. On the other hand, G. L. c. 152,

435, 441-442 (1932). Indeed, the Legislature has promoted employee reliance on compensation benefits by making the Act compulsory for most employers as of 1943 (St. 1943, c. 529, § 7), knowing that few employees would refuse its benefits. See *Brown* v. *Leighton,* 385 Mass. 757, 760-761 (1982); *Alecks's Case,* 301 Mass. 403, 404 (1938). At the same time, the Legislature has encouraged employees to exercise their rights against third parties by greatly expanding the right of the employee to recover against a third party.[9] Since 1980, the employee has been given the exclusive right to bring suit against a third party for the first seven months following the injury. St. 1980, c. 488. We think this pattern of legislative action indicates the Legislature's intention that the injured employee be fully compensated for his injuries. If the injured employee is free from negligence, there is no reason to deny him full recovery. If he is not, his negligence can be accounted for directly by comparing it to the negligence of the third party in determining both the latter's liability and damages. G. L. c. 231, § 85. If there is more than one defendant, they have mutual rights of contribution. But we see nothing in the comparative negligence statute or the contribution statute, or in the policies that they were enacted to promote, which would cause us here to take judicial action which would negate the Legisla-

---

§ 28, provides that an employee who is injured by the serious and wilful misconduct of his employer or regular superintendent shall receive double compensation.

[9] In 1939, the employee was granted the right to proceed against the third party in certain circumstances if the insurer had not done so within a specified time. St. 1939, c. 401. In 1971, the provision granting the insurer who had paid compensation an exclusive right to bring suit for a period of time following the injury was eliminated and the insurer was no longer allowed to retain one-fifth of any recovery in excess of its compensation payments. St. 1971, c. 888, § 1, amending St. 1945, c. 432. Also in 1971, a sentence was added to G. L. c. 152, § 15, to the effect that nothing in §§ 15, 18, or 24 should be construed to bar an action at law for injuries or wrongful death by an employee against any person other than the insured. St. 1971, c. 941, § 1.

ture's strong and repeated expression of intent that the injured employee be fully compensated for his injuries.[10]

## QUESTION TWO

"If the answer to question 1 is in the negative, should any such negligence of Concord Steel be given any other effect in the negligence count in this action or should it be totally disregarded?" To the extent that this question asks whether some equitable solution other than that proposed by Firestone should be employed, we answer in the negative for the reasons set forth above. To the extent that this question relates to the scope of the evidence which may properly be presented at trial, we answer as follows.

It is elemental that a plaintiff may recover from a defendant in negligence only if he proves that the defendant's breach of a duty of care owed to the plaintiff proximately caused the plaintiff's injuries. *Payton* v. *Abbott Labs.*, 386 Mass. 540, 548 (1982). It is equally elemental that the defendant may seek to avoid liability by offering evidence tending to disprove the existence of any duty, breach, cause, or injury. We detect from the judge's question and order of certification that Firestone may attempt to offer evidence of Concord Steel's negligence for this reason, apparently on the theory that Concord Steel's negligence either superseded its own as the cause of Correia's injuries or that it was never negligent and that Correia's death was caused entirely either by the negligence of Concord Steel or of Correia. The problem, of course, is that any negligence of Concord Steel is not material to the issue of Firestone's liability unless Concord Steel's negligence, either standing alone or combined with the negligence of Correia, was the sole proximate cause of Correia's injuries.

---

[10] We also note that it has long been the policy of this Commonwealth that a tortfeasor is liable "for the foreseeable intervening conduct of a third party whether that conduct is negligent or not." *Wilborg* v. *Denzell*, 359 Mass. 279, 285 (1971), and cases cited. See Restatement (Second) of Torts § 442B (1965).

QUESTION THREE

"Does Massachusetts recognize contributory or compara-
tive negligence or fault as a full or partial defense to an ac-
tion for personal injury or wrongful death based on breach
of warranty?" We answer, "No."

We have recognized on a number of occasions that claims
based on breach of warranty sound essentially in tort. *Wolfe*
v. *Ford Motor Co.*, 386 Mass. 95, 99 (1982). *Back* v.
*Wickes Corp.*, 375 Mass. 633, 639-640 (1978). *Swartz* v.
*General Motors Corp.*, 375 Mass. 628, 630 (1978). Further,
we have recognized that in this Commonwealth the theory
of implied warranty provided by G. L. c. 106, §§ 2-314-
2-318, is "congruent in nearly all respects with the princi-
ples expressed in Restatement (Second) of Torts § 402A
(1965)," which defines the strict liability of a seller for
physical harm to a user or consumer of the seller's product.
*Back* v. *Wickes Corp.*, *supra* at 640.

Starting with Firestone's argument that G. L. c. 231,
§ 85, should be construed to apply to breach of warranty
actions, we think that this argument is foreclosed by the lan-
guage of § 85 itself. Section 85 is applicable only to actions
"by any person or legal representative to recover damages
for negligence resulting in death or in injury to person or
property." *Id.* As Restatement (Second) of Torts § 402A,
comment n, indicates, actions for strict liability are not ac-
tions in negligence. The defendant may be liable "even
though he has exercised all possible care in the preparation
and sale of the product." Restatement (Second) of Torts
§ 402A comment a (1965).[11] Compare *McKinnon* v. *Skil
Corp.*, 638 F.2d 270 (1st Cir. 1981) (trial judge, apparently
relying on G. L. c. 231, § 85, instructed jury to diminish

---

[11] We do not view strict liability as tantamount to negligence per se and
we decline to follow those Wisconsin cases which do so. *Powers* v. *Hunt-
Wesson Foods, Inc.*, 64 Wis. 2d 532 (1974). *Dippel* v. *Sciano*, 37 Wis. 2d
443 (1967) (apparently the first case to apply a comparative negligence
statute to a strict products liability case). Compare *Murray* v. *Fairbanks
Morse*, 610 F.2d 149 (3d Cir. 1979).

recovery in warranty case in proportion to plaintiff's degree of fault unless recovery was barred because the plaintiff's negligence was greater than fifty per cent; issue not discussed on appeal since proper objection not made at trial and appellate court saw no cause to apply "plain error" exception). See Schwartz, Strict Liability & Comparative Negligence, 42 Tenn. L. Rev. 171 (1974).

If the comparative negligence statute does not literally apply, the question remains whether its underlying principles should be given effect by judicial adoption. This is the course of action most strongly urged by Firestone. We decline to take such action. To do so would be to meld improperly the theory of negligence with the theory of warranty as expressed in G. L. c. 106, §§ 2-314 - 2-318, and thereby to undercut the policies supporting these statutes.

Simply stated, the policy of negligence liability presumes that people will, or at least should, take reasonable measures to protect themselves and others from harm. This presumption justifies the imposition of a duty on people to conduct themselves in this way. A person harmed by one whose conduct "falls below the standard established by law for the protection of others against unreasonable risk," Restatement (Second) of Torts § 282 (1965), may recover against the actor. However, if the injured person's unreasonable conduct also has been a cause of his injury, his conduct will be accounted for in apportioning liability or damages.

Strict liability is justified on a much different basis. "On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those

who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement (Second) of Torts § 402A comment c (1965). Recognizing that the seller is in the best position to ensure product safety, the law of strict liability imposes on the seller a duty to prevent the release of "any product in a defective condition unreasonably dangerous to the user or consumer," into the stream of commerce. Restatement (Second) of Torts § 402A(1) (1965). This duty is unknown in the law of negligence and it is not fulfilled even if the seller takes all reasonable measures to make his product safe. The liability issue focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the user or the seller. Given this focus, the only duty imposed on the user is to act reasonably with respect to a product which he knows to be defective and dangerous. When a user unreasonably proceeds to use a product which he knows to be defective and dangerous, he violates that duty and relinquishes the protection of the law. It is only then that it is appropriate to account for his conduct in determining liability. Since he has voluntarily relinquished the law's protection, it is further appropriate that he be barred from recovery. The absolute bar to the user for breach of his duty balances the strict liability placed on the seller.[12] Other

---

[12] Since G. L. c. 231, § 85, is limited to actions in negligence, it would not apply here to diminish damages for a product user found to be contributorily negligent in the manner described. Cf. *Thibault* v. *Sears, Roebuck & Co.*, 118 N.H. 802 (1978) (adopting comparative concept to diminish plaintiff's recovery to the degree his "misconduct" caused his injury. If plaintiff's "misconduct," a term used to encompass the conduct previously recognized as assumption of the risk or abnormal use or mishandling of the product, is greater than fifty per cent, verdict for the defendant is required). Schwartz, Strict Liability & Comparative Negligence, 42 Tenn. L. Rev. 171, 174-176 (1974). For this reason, also, the use of the phrase "assumption of the risk" in Restatement (Second) of Torts § 402A, comment n (1965), is not incompatible with the abolition of assumption of the risk in § 85 as a defense in negligence actions.

than this instance, the parties are not presumed to be equally responsible for injuries caused by defective products, and the principles of contributory or comparative negligence have no part in the strict liability scheme. Given this focus, the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous. In such circumstances, the user's conduct alone is the proximate cause of his injuries, as a matter of law, and recovery is appropriately denied. In short, the user is denied recovery, not because of his contributory negligence or his assumption of the risk but rather because his conduct is the proximate cause of his injuries.

The policies of negligence and warranty liability will best be served by keeping the spheres in which they operate separate until such time as the Legislature indicates how and to what extent they should be melded.[13] The standards of care and the duties are well defined in each sphere. The comparative negligence statute defined no standard of behavior and imposed no duty not previously recognized under the traditional theories of contributory negligence. It merely adjusted the manner in which unreasonable conduct which caused injury would be treated in a negligence action. There is no reason to presume that by passage of the comparative negligence statute the Legislature intended to merge negligence liability with warranty liability. Even if we were convinced that some restructuring of the Massachusetts law of warranty was necessary, we ordinarily would leave that restructuring to the Legislature, given the wide variety of possible solutions it might reasonably adopt.[14]

---

[13] At least one State legislature has specifically prohibited such a merger. See Conn. Gen. Stat. § 52-572n(a) (1981).

[14] This is not a case where our law is so "out of harmony with the overwhelming weight of authority in other States," *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 631 (1978), that we feel compelled to reexamine it. We are not the first court to conclude that the principles of comparative negligence are fundamentally incompatible with strict liability. See, e.g., *Melia* v. *Ford Motor Co.*, 534 F.2d 795 (8th Cir. 1976) (applying Nebraska law); *Kinard* v. *Coats Co.*, 37 Colo. App. 555 (1976). *Smith* v. *Smith*, S.D.        (1979) (278 N.W.2d 155 [S.D. 1979]); Annot., 9 A.L.R. 4th 638-641 (1981 & Supp. 1982).

Restatement (Second) of Torts § 402A comment n (1965), states the essence of our position. To paraphrase and elaborate on that comment, we conclude that the plaintiff in a warranty action under G. L. c. 106, § 2-314, may not recover if it is found that, after discovering the product's defect and being made aware of its danger, he nevertheless proceeded unreasonably to make use of the product and was injured by it.[15] No recovery by the plaintiff shall be diminished on account of any other conduct which might be deemed contributorily negligent.

## QUESTIONS FOUR AND FIVE

"4. If Concord Steel's negligence or fault (other than negligence or fault of Mr. Correia) was a proximate cause of Mr. Correia's death, what effect, if any, should be given to such negligence or fault in the breach of warranty count in this action?

"5. If negligence or fault of Concord Steel (other than negligence or fault of Mr. Correia) does operate to reduce the amount of any damages that would otherwise be payable by Firestone, what effect, if any, does such reduction have on Concord Steel's workmen's compensation insurer's right to reimbursement under M.G.L. c. 152, § 15?"

We have responded to Question Four in our answer to Question One, Two and Three. We need not answer Question Five.

To recapitulate, we answer Question One, "No," Question Two, "No," Question Three, "No," with qualifications.

---

[15] The fact that a seller, manufacturer, or distributor is not liable if a plaintiff is injured as a consequence of his unforeseeable misuse of a product, see *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978), is most properly analyzed as an element of the plaintiff's case, since he must prove that his injury was caused by a defect making the product unfit for its ordinary use. See *Thibault* v. *Sears, Roebuck & Co.*, 118 N.H. 802, 809 (1978); W. Prosser, Torts § 102, at 668-669 (4th ed. 1971). As such, it is distinct from the defendant's burden to prove contributory negligence, although the defendant may offer evidence tending to prove that the plaintiff's injury did not occur as the result of a foreseeable use.