## In re MASSACHUSETTS ASBESTOS CASES.

United States District Court,
D. Massachusetts.

Feb. 27, 1985.

Stanley J. Levy, Robert I. Komitor, Levy, Phillips & Konigsberg, New York City, Michael P. Thornton, John T. Barrett, Thornton & Early, Boston, Mass., for plaintiffs.

Thomas D. Burns, Lawrence G. Cetrulo, Burns & Levinson, Boston, Mass., for defendants.

## PRETRIAL ORDER

February 26, 1985

ZOBEL, District Judge.

The parties have filed, briefed and argued several motions in limine and motions addressed to the pleadings.

1. *Plaintiffs' Motion in Limine to Exclude Evidence of Employers' Negligence.*

The parties agree that the motion is to be determined by *Correia v. Firestone Tire and Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033 (1983). Under *Correia*, the negligence of plaintiff's employer is not to be given effect unless the employer's negligence, either alone or combined with plaintiff's negligence, was the sole proximate cause of plaintiff's injuries. *Correia*, 446 N.E.2d at 1038–39.

Taking this statement as the applicable standard, plaintiffs ask the Court to determine that any negligent act or failure to act by plaintiffs' employers could not constitute the "sole proximate cause" of plaintiffs' injuries. In the absence of evidence, however, the Court cannot make such a determination.[1] Accordingly, evidence of employer negligence will be admitted at trial, but only if defendants submit a written offer of proof before trial, which makes a prima facie showing that any em-

---

1. Plaintiffs have submitted deposition testimony that some defendants did not place warnings on their products. These facts may be relevant on the issue of defendants' negligence, but they do not prove or disprove the existence of employer negligence.

ployer negligence was the superseding and thus sole proximate cause of plaintiffs' injuries.[2]

2. *Manufacturing and Distributing Defendants' Motion in Limine Concerning the Defense of Lack of Privity.*

■ The motion requests a ruling that the lack of privity defense is available to defendants on plaintiffs' breach of warranty claims "in all cases wherein a plaintiffs' last exposure to asbestos-containing products occurred before December 7, 1973, provided the last sale of the products involved occurred before November 17, 1971."

The availability of the defense of lack of privity is governed by Mass.Gen.Laws Ann. ch. 106, § 2–318. That section, originally adopted in 1957, was amended in 1971 and 1973 to provide that lack of privity between plaintiff and defendant shall not be a defense in an action for negligence or breach of warranty if the plaintiff was a person whom the defendant manufacturer or seller might reasonably have expected to use, consume or be affected by the goods. The 1973 amendment also provided that all actions must be commenced within two years of the date the injury occurred and that the provisions of the Act apply to injuries which occurred after the effective date of the Act. St. 1973, ch. 750. In 1974, the statute was again amended to provide that all actions shall be commenced within three years of the date "the injury and damage" occurred. St. 1974, ch. 153.

The controlling language on the question before me is found in the 1973 amendment: "Section 2–318 ... shall apply ... to injuries which occur after the effective date of this act." St. 1973, ch. 750. Thus, lack of privity is not a defense in actions arising from injuries which occurred after December 16, 1973, the effective date of the 1973 amendment. *Payton v. Abbott Labs,* 551 F.Supp. 245, 246 (D.Mass.1982); *Cameo Curtains, Inc. v. Philip Carey Corp.,* 11

Mass.App.Ct. 423, 416 N.E.2d 995, 997 (1981); *Hoffman v. Howmedica,* 373 Mass. 32, 364 N.E.2d 1215, 1217 (1977).

The only question remaining is when did the "injury" in these cases occur. Defendants emphasize the statutory language of the 1974 amendment relating to the limitations period, which refers to the date the "injury and damage occurs." They argue that the "damage" element is the manifestation of asbestos-related disease, and thus the "injury" must have occurred at an earlier date when the plaintiff was exposed to asbestos. Under this interpretation, lack of privity would be an available defense against all plaintiffs who were first exposed to asbestos before 1973. However, the Massachusetts Appeals Court has interpreted that language rather more expansively. It held that the 1974 amendment extended the limitations period "from the time the injury is first perceived to the time when damage flowing from the injury can fairly be estimated." *Cameo,* 416 N.E.2d at 997. Nothing in the statutory language or the cases interpreting it suggests any modification of the term "injury" by the term "damage," nor any narrowing of the applicability of the underlying statute barring lack of privity as a defense.

Defendants' argument that the asbestos-related "injury" occurs at the time of exposure to asbestos fibers is also untenable under the case law of this circuit. *See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance,* 682 F.2d at 19 & n. 3. As the First Circuit recognized:

'Injury' is defined by Webster as 'hurt, damage or loss sustained'; it is a broad term which covers the 'result of inflicting on a person or thing something that causes loss, pain, distress, or impairment.' As sweeping as this definition is, it is difficult to consider sub-clinical results to the lung to constitute an 'injury' when these insults do not cause 'loss, pain, distress, or impairment' until, if

---

**2.** I note that under Massachusetts law the intervening negligence of another is not a "superseding" cause if it was foreseeable by the original

tortfeasor. *See Correia,* 446 N.E.2d at 1038; *Carter v. Yardley,* 319 Mass. 92, 64 N.E.2d 693, 697 (1946) (citing cases).

ever, they accumulate to become clinically evident or manifest.

*Eagle-Picher Industries v. Liberty Mutual Ins.*, 682 F.2d 12, 19 (1st Cir.1982). Although *Eagle-Picher* involved the interpretation of the language of an insurance policy to determine when coverage was triggered the definition of "injury" therein is equally applicable in this context.

I hold that "the first appearance of symptoms attributable to [asbestos] constitutes the injury." *See Payton v. Abbott Labs*, 551 F.Supp. at 246. Accordingly, the defense of lack of privity is not available against any plaintiff whose first manifestation of physical symptoms attributable to an asbestos-related disease occurred after December 16, 1973.

3. *Plaintiffs' Motion to Strike State of the Art Defense from Defendants' Answers.*

■ Plaintiffs assert that under Massachusetts warranty law, "[t]he state of the art is irrelevant." *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273, 277 (1984). I must decide whether this is a correct and controlling statement of Massachusetts law. Because I conclude it is only dictum, I consider what the Massachusetts position on this issue is without *Hayes v. Ariens Co.* and whether *Hayes* indicates convincingly how the Supreme Judicial Court would decide the question if it were posed directly.

The admissibility of state of the art[3] evidence was not at issue in *Hayes v. Ariens Co.* The product in that case, a snowblower, was alleged to be defective because of an inadequate warning of the dangers associated with placing one's hand in the discharge chute without turning off the engine. There was no suggestion that the state of the art with respect to this danger had changed between the date of sale and the date of trial.[4] The precise question before the Supreme Judicial Court was whether the jury's verdicts of 40% manufacturer negligence but no breach of warranty were inconsistent. In holding that they were, the court had occasion to expound on the differences between negligence and warranty theories of recovery against a machine manufacturer. In the course of this, it commented on state of the art evidence. The court's statement in *Hayes* therefore is dictum and is not a controlling statement of Massachusetts warranty law.

Massachusetts generally follows § 402A of the *Restatement (Second) of Torts* on breach of warranty liability. *Wolfe v. Ford Motor Co.*, 386 Mass. 95, 434 N.E.2d 1008, 1010 (1982); *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964, 969 (1978). Comment j to § 402A provides that the seller's or manufacturer's duty to warn of dangers associated with the product attaches "if he has knowledge, or by the application of reasonable, developed human

---

**3.** The phrase is susceptible to different meanings. *See Wade*, "On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing," 58 N.Y.U.L.Rev. 734, 750–51 (1983). The Massachusetts Appeals Court has defined it as "the level of pertinent scientific and technical knowledge existing at the time." *Wiska v. St. Stanislaus Social Club, Inc.*, 7 Mass.App.Ct. 813, 390 N.E.2d 1133, 1138 n. 8 (1979). Consistent with this broad definition, I take the phrase to include not only the prevailing knowledge, practice, and customs in the manufacturer's industry but also knowledge derived from relevant research in fields outside of the industry. Beyond this, I do not here express an opinion on the relevance of any particular type of state of the art evidence.

**4.** In a technical sense, state of the art evidence is always relevant. The finder of fact cannot anticipate tomorrow's scientific developments and so must decide whether the product is unreasonably dangerous on the date of trial. The real issue—posed acutely only in cases where the state of the art has changed since the date of sale—is when the state of the art is to be measured. The broader theory of liability urged by plaintiffs factors developments or discoveries made up to the present into the determination of the product's dangerousness or defectiveness. The defendants' narrower theory confines the factfinder to a decision given the state of the art on the date of sale or entry of the product into the stream of commerce. Under either theory, the manufacturer is subjected to strict rather than negligence liability because it is presumed to have knowledge of the propensities of its product as of a certain date.

**4**

skill and foresight should have knowledge, of ... the danger." *Restatement (Second) of Torts* § 402A comment j (1965). Other courts, interpreting § 402A and comment j in the context of asbestos cases, have required that "the danger be reasonably foreseeable, or scientifically discoverable" at the time the product is sold. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1088 (5th Cir.1973) (Texas law). *See also Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155, 158–59 (8th Cir. 1975) (Minnesota law). Thus, I conclude that, apart from *Hayes v. Ariens Co.*, Massachusetts law would allow evidence of the state of the art in a breach of warranty, failure to warn case.[5] The final question is whether the dictum in *Hayes* alone is sufficient to establish a new rule in Massachusetts.

The seemingly clear statement in *Hayes* that "the state of art is irrelevant" is embraced in the same paragraph by ambiguous and conflicting explanations which render the paragraph internally inconsistent. Beginning three sentences before the pivotal one, the court stated with emphasis:

> [T]he adequacy of a warning is measured by the warning that would be given at the time of sale by an ordinarily prudent vendor who, at that time, is fully aware of the risks presented by the product. A defendant vendor is held to that standard regardless of the knowledge of risks that he actually had or reasonably should have had when the sale took place.

462 N.E.2d at 277 (emphasis in original). State of the art evidence is relevant to this standard because it determines what knowledge the manufacturer is presumed to have of the dangers associated with its product at the time of sale. But only three sentences of text after the pivot of the paragraph, the court said that the jury's finding of no breach of warranty "necessarily implied that the warning given was adequate regardless of when the risk to be warned about was discovered or was discoverable." 462 N.E.2d at 278. Although this is actually a description of the verdict and not a statement of law, it resonates in the expanded theory of strict liability that excludes state of the art evidence.

Plaintiffs try to bolster the shaky reasoning of *Hayes* and draw it to their side by reference to the authorities cited by the *Hayes* court: *Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 447 A.2d 539 (1982); *Phillips v. Kimwood Machine Co.*, 269 Or. 485, 525 P.2d 1033 (1974); and Wade, "On the Nature of Strict Tort Liability for Products," 44 Miss.L.J. 825 (1973). Two of these offer plaintiffs no support.[6] Only *Beshada* is an unequivocal exposition of plaintiffs' position, and it has been all but overruled in New Jersey. *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374, 387–88 (1984). *See also O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298, 308 (1983) (Clifford, J., concurring) (describing *Beshada* as an "exotic theory"). Although *Beshada* remains in full effect for

---

**5.** The Supreme Judicial Court touched on the state of the art issue in *Back v. Wickes Corp.* In that case, there was considerable evidence of industry practices in the design of motor homes. The court found no error in the trial judge's refusal to instruct that such evidence was immaterial on the warranty count. The jury's "judgment as to the social acceptability of the design ... is the same judgment originally made by the designer of the product." 378 N.E.2d at 970. Plaintiffs were free to "argue that industry standards can and should be more stringent," but conformity to those standards and factors such as the feasibility of safer designs were relevant to the warranty inquiry. 378 N.E.2d at 970. The court also held that the judge properly refused, on the *negligence* count, to instruct that a manufacturer " 'is held by the law to an expert's knowledge of the arts, materials and pro-

cesses relating to his product.' " 378 N.E.2d at 971.

**6.** The Oregon Supreme Court noticed but did not decide the issue of when the knowledge that is imputed to the manufacturer is determined. *Phillips*, 525 P.2d at 1036 n. 6. The court also noted that Dean Wade stood on the side of imputing knowledge at the time of sale, not trial. *Id.* Dean Wade recently offered an excursus on this difference between his and Dean Keeton's approaches in a postscript to Wade, "On the Effect in Product Liability of Knowledge Unavailable Prior to Marketing," 58 N.Y.U. L.Rev. 734, 762–64 (1983). Thus, writing after and discussing *Beshada*, Dean Wade places himself in the opposite camp. *Id.* at 760–61.

the New Jersey asbestos litigation, in a strikingly similar situation involving a drug manufacturer's liability for failure to warn of potential side effects from its product, the New Jersey Supreme Court has reverted to the view that "the state of the art in design defect cases and available knowledge in defect warning situations are relevant factors in measuring reasonableness of conduct." *Feldman,* 479 A.2d at 386. *See also O'Brien,* 463 A.2d at 305 (state of the art evidence relevant though not dispositive).

I conclude that *Hayes v. Ariens Co.* does not effect a change in the Massachusetts rule. Plaintiffs' motion in limine therefore is denied.

### 4. *Defendants' Motion to Remove Cases from Trial List.*

On the representation of plaintiffs' counsel that they would forthwith respond to all outstanding discovery requests and comply with all outstanding discovery orders in the subject cases, the motion is denied except as to Civil Action No. 79–2198, Morris Ginsberg, which is stricken from the trial list by agreement.

### 5. *Pittsburgh Corning Corporation's Post-Dayton v. Peck, Stow & Wilcox, et al. Motion for Summary Judgment-Successor Liability.*

 The opinions of Magistrate DeGiacomo and Judge McNaught on Pittsburgh Corning Corporation's earlier motion for summary judgment are clear that the reason for denial of the motion was the existence of disputed issues of fact. Nothing in the most recent submission changes the correctness of that earlier holding insofar as the Court relied on the first exception to the general rule of nonliability—express or implied assumption of the seller corporation's liability. The motion for summary judgment is therefore denied.[7]

---

7. Insofar as Pittsburgh Corning Corporation seeks a declaration that it is not liable under Massachusetts law as successor solely on the basis of the so-called product line exception, the decision of the Court of Appeals in *Dayton v.*

*Peck, Stow & Wilcox,* 739 F.2d 690 (1st Cir. 1984), does support defendant, Massachusetts does not now impose successor corporate liability on that theory.