NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1215                                          Appeals Court

ROBERT ROSE & another[1]  vs.  HIGHWAY EQUIPMENT COMPANY; JAY
                SPLAINE,[2] third-party defendant.


No. 13-P-1215.

Suffolk.     May 9, 2014.  -  August 27, 2014.

Present:  Green, Meade, & Sullivan, JJ.


Negligence, Comparative.  Warranty.  Practice, Civil,
    Affirmative defense, Instructions to jury.  Words,
    "Unreasonable use."



Civil action commenced in the Superior Court Department on
July 13, 2009.

The case was tried before D. Lloyd Macdonald, J.


Deborah M. Santello for the plaintiffs.
Christopher J. Sullivan (Jonathan Klein with him) for
Highway Equipment Company.

---

[1] Erica Rose, the wife of Robert Rose.  Erica did not
recover on her claim for loss of consortium.

[2] Doing business as Splaine Repairs.  Splaine was impleaded
by Highway Equipment Company (HECO) as a third-party defendant.
The jury did not reach the question of Splaine's negligence,
which concerned Splaine's role in mounting the spreader with a
twenty-inch setback, as opposed to the required four inches or
less, because the jury returned a verdict in favor of HECO.

J. Michael Conley & Thomas R. Murphy, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.


MEADE, J. Plaintiff Robert Rose sued Highway Equipment Company (HECO), the manufacturer of a broadcast spreader, after Rose severely injured his hand while oiling the spreader's chain.[3] Rose's suit asserted causes of action for negligence and breach of the implied warranty of merchantability. On the negligence count, the jury found Rose seventy-three percent negligent and HECO twenty-seven percent negligent, which foreclosed recovery. See G. L. c. 231, § 85. On the breach of warranty claim, the jury answered "yes" to the special question of whether Rose's use of the spreader was unreasonable, barring Rose from recovery on that claim. See Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 355 (1983) (Correia). On appeal, Rose claims that certain jury instructions created reversible error. We affirm.[4]

The jury heard various accounts of how Rose's hand became caught in the spreader. It was uncontested that the spreader

---

[3] Also referred to as a sander, the model E2020XT broadcast spreader is a "hopper-type" unit that mounts on a truck chassis in order to disburse abrasives like sand and salt onto road surfaces. The spreader's rotating spinners, which operate on a chain and sprocket system, provide the force to broadcast materials off the truck.

[4] We acknowledge the amicus brief filed by the Massachusetts Academy of Trial Attorneys on behalf of the Roses.

needed to be running in order for its chain to be effectively oiled. Rose explained that, before the accident, he was kneeling or crouching between the cab of the truck and the spreader, using something akin to a Windex bottle to spray oil on the chain. Rose testified that he suddenly felt a tug at the sleeve of his sweatshirt and was unable to extricate himself from the grip of the spreader before his right hand and forearm were pulled into the mechanism.[5] After the accident, Rose told his boss, who is also his father-in-law, that he was injured when reaching backwards for the bottle of oil. In contrast, it was HECO's theory that Rose, after drinking beer earlier that afternoon, lost his balance while on a ladder on the operator's side of the truck and fell into the spreader.

Unlike an action in negligence, a breach of warranty claim primarily concerns the nature of the product, not the actions of the user. Colter v. Barber-Greene Co., 403 Mass. 50, 61-62 (1988). See Correia, supra. While a factfinder in a warranty claim must focus on the characteristics of the product, the duty "to act reasonably" is imposed on the product's user. Ibid. "When a user unreasonably proceeds to use a product which he knows to be defective and dangerous, he violates that duty and

---

[5] Although not described here, counsel for HECO impeached Rose's trial testimony and deposition testimony in ways that the jury could have found significant.

relinquishes the protection of the law." Ibid. The apportionment principles used in negligence claims, which permit a plaintiff to recover as long as his negligence equates to less than the negligence attributed to the defendant, are not applicable to warranty cases. The defense of unreasonable use provides a complete bar to recovery. Ibid.

Contrary to Rose's claim, the evidence at trial was sufficient to support the judge's submission of the unreasonable use defense to the jury, in both the form of a jury instruction and a special verdict question. Rose testified that he oiled the spreader's chain multiple times, from the back of the unit and the front. Rose's boss testified that he instructed Rose to stay away from the front of the spreader when he was oiling it.[6] Rose's boss also testified that Rose understood that oiling the chain was potentially dangerous. Rose admitted that although he was instructed to oil the chain from the back of the truck, he chose to oil the chain from the front because he thought that it would be easier. On cross-examination, Rose also admitted that

---

[6] The jury heard testimony about "guarding by location," an engineering concept related to obstructing or discouraging contact with hazards, based on the way the hazard is located within a machine or in relation to another object. HECO's engineers testified that the spreader was not supposed to be mounted more than four inches from the cab of a truck, so as to discourage access to the machine's most dangerous nip points. HECO argued that when Splaine installed the spreader with a twenty-inch setback, he improperly eliminated the guarding by location.

he saw the spreader's warning label, but never read it. Similarly, Rose testified that he was familiar with the spreader's safety manual, but had not read it. Rose testified that he never thought about whether it was dangerous to oil the chain, but he was impeached with his deposition testimony that he understood that "[i]f you put your hand in [the spreader], you could get hurt."

While there was conflicting evidence about the amount of alcohol he consumed on the day of the accident, Rose's decision to drink beer before oiling the spreader also supported the judge's decision to instruct the jury on unreasonable use. Both parties presented toxicology experts, and the jury were permitted to credit HECO's expert, who testified that, based on blood test results taken at two area hospitals, Rose's blood alcohol level would have been 0.13 or higher at the time of the accident. This would have been possible, HECO's expert explained, only if Rose consumed many more than the two beers he testified about drinking before the accident.

Rose claims that HECO failed to prove that he subjectively knew that the spreader was defective and that he subjectively knew of the danger and the magnitude of the risk of injury. In order to prevail on the Correia defense, a defendant must "demonstrate that the plaintiff 'subjectively knew that the product was defective and dangerous, [and] that, despite that

subjective belief, the plaintiff's use of the product was objectively unreasonable, and that the plaintiff's conduct was a cause of the injury.'" Haglund v. Philip Morris Inc., 446 Mass. 741, 749 (2006), quoting from Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 17 (1st Cir. 2001). While the burden was on HECO to show Rose's subjective knowledge, HECO was not required to prove this solely through a direct admission by Rose. Rose's testimony about his familiarity with operating the spreader and other types of heavy machinery, his inconsistent statements about his understanding of the spreader's danger, the fact that Rose's boss instructed him to oil the chain from the back and testified that he believed Rose understood the dangers that oiling the spreader presented, along with evidence that Rose consumed alcohol before the accident, taken together, provided the judge with a suitable basis to present the unreasonable use defense to the jury.[7]

---

[7] The judge's jury instruction on the unreasonable use defense mirrored the model jury instruction used in Superior Court, save the phrase "the implied warranty version in effect of the contributory negligence defense," discussed infra. See Massachusetts Superior Court Civil Practice Jury Instructions § 11.3.5 (Mass. Cont. Legal Ed. 2d ed., 1st supp. 2011). The judge's complete instruction on the unreasonable use defense, which does not differ in substance from the parallel written instruction that he provided to the jury, was as follows:

"Now, there has been reference in counsel's argument to unreasonable use defense and warranty claim, and I am now going to address that. This in answer to the plaintiff's claim that the defendant breached it[s]

Rose also claims that the judge improperly explained the subjective knowledge requirement to the jury. We disagree. When a defendant asserts the <u>Correia</u> defense, proof of the "plaintiff's subjective knowledge of a product's defect need not be technically specific; 'it is enough to show that the plaintiff knew the product was defective in some way, rather than showing that it knew the technical elements of the defect.'" <u>Haglund</u> v. <u>Philip Morris Inc</u>., <u>supra</u>, quoting from

---

warranty of merchantability with regard to the product, HECO alleges the affirmative defense that the plaintiff knowingly, voluntarily and unreasonably used a product which he knew to be defective and dangerous, and as a result that he was injured.

"The deliberate unreasonable use of a product is a complete defense to a claim of negligent design. This is the implied warranty version in effect of the contributory negligence defense described earlier. And also the defendant has the burden of proof on this issue. The defendant has the burden of proof by a preponderance of the evidence on this issue.

"This is a defense and will bar recovery by the plaintiff for any breach of warranty if, and only if, you find that the defendant, number one -- I mean that the plaintiff, number one, knew of the product's defect and its danger, number two, nevertheless proceeded to use the product voluntarily and unreasonably, and third, was injured as a result. In other words, prior to the accident, the plaintiff must have had knowledge of the product's defect, and the danger present, and must have proceeded to use the product with an appreciation of this known danger.

"If you find that the defendant has proven each of these elements by a preponderance of the elements [sic], then the plaintiff cannot recover under the legal theory of breach of warranty."

Cigna Ins. Co. v. Oy Saunatec, Ltd., supra at 19.  Here, the judge instructed the jury that "HECO alleges the affirmative defense that the plaintiff knowingly, voluntarily and unreasonably used a product which he knew to be defective and dangerous, and as a result that he was injured."  The judge also stated that it was the defendant's burden of proof to show that the plaintiff "knew of the product's defect and its danger" and explained furthermore that "prior to the accident, the plaintiff must have had knowledge of the product's defect, and the danger present, and must have proceeded to use the product with an appreciation of this known danger."  This was a sufficient explanation of HECO's duty to show Rose's subjective understanding of the defect and danger.

Finally, Rose challenges the judge's use of the phrase "the implied warranty version in effect of the contributory negligence defense described earlier" to segue between describing the implied warranty claim and its affirmative defense of unreasonable use.  When read in context, "the implied warranty version in effect" language was likely meant to serve as an introductory signal to the jury, one that indicated that the unreasonable use defense was an affirmative defense, similar in general nature to the affirmative defense of comparative negligence that the judge had just explained following the negligence charge.  Rose claims that the phrase should be read

as one that improperly harmonized the absolute defense of warranty liability with the apportionment liability principles of negligence. We disagree. Indeed, the jury were never instructed to weigh Rose's conduct in relation to HECO's on the warranty claim. Instead, the judge described to the jury what it must find in order to characterize Rose's use of the spreader as unreasonable. A thorough and proper explanation of the elements of the unreasonable use defense followed the challenged remarks, minimizing the risk that the jury conflated the two defenses. Also relevant is the fact that the judge, multiple times in his instructions, underscored for the jury that the two claims, negligence and warranty liability, were distinct.

Finally, the judge described the unreasonable use defense as the "version in effect of the contributory negligence defense described earlier," instead of the comparative negligence defense. The judge gave a thorough comparative negligence instruction, but he also referenced Rose's "contributory negligence." While the judge misspoke, the jury were not likely to improperly rely on contributory negligence principles to reach its verdict, because the judge never explained the concept of contributory negligence to the jury. In this context, the judge's use of the word "contributory" instead of "comparative," which neither party objected to, was unlikely to hinder the jury's understanding of the unreasonable use defense.

When considering the approximately fifty pages of jury instructions given in this case, including elaborate and repetitive descriptions of the elements of the two claims and their affirmative defenses, we conclude that the inclusion of the challenged phrase does not require reversal of the jury's verdict.  When read as a whole, we are satisfied that the judge "clearly, adequately, and correctly explained to the jury the principles that ought to guide and control" their deliberations. Torre v. Harris-Seybold Co., 9 Mass. App. Ct. 660, 678 (1980).

Judgment affirmed.