JOHN T. GOULET vs. WHITIN MACHINE WORKS, INC.

No. 89-P-803.

Bristol. December 11, 1990. - March 25, 1991.

Present: PERRETTA, KAPLAN, & GILLERMAN, JJ.

*Warranty. Negligence*, Manufacturer, Design. *Practice, Civil*, Verdict, New trial.

In a breach of warranty case, the plaintiff's testimony provided adequate foundation for the jury to conclude that the plaintiff did not know he risked losing his arm when cleaning a defectively designed carding machine [313-316], and the judge's instructions with respect to the plaintiff's knowledge of the risk of "serious injury" were appropriate [316-317].

CIVIL ACTION commenced in the Superior Court Department on May 21, 1979.

After review by the Supreme Judicial Court, 399 Mass. 547 (1987), the plaintiff's breach of warranty claim was tried before *Chris Byron*, J.

*Joseph D. Regan* for the defendant.

*Carol S. Ball* (*Frank W. Kilburn* with her) for the plaintiff.

GILLERMAN, J. John T. Goulet (plaintiff) commenced an action against Whitin Machine Works, Inc. (defendant), on May 21, 1979. He alleged the negligent design and construction of a machine operated by the plaintiff which resulted in the amputation of his right arm above the elbow. After the plaintiff's motion to amend his complaint to include claims for breach of warranty was denied, the case was tried to a jury which returned a verdict for the plaintiff in the amount of $225,000. The jury also found the plaintiff fifty percent contributorily negligent. In 1987, on the plaintiff's appeal, the Supreme Judicial Court held that the denial of the motion to amend was error and ordered a new trial on the claim

of breach of implied warranty of merchantability. Because the first jury had found that the defendant was negligent in the design of the machine, and because defense counsel had conceded at oral argument that notice was not an issue, the court ordered that "the only issue on remand is whether the plaintiff 'unreasonably proceed[ed] to use [the] product which he [knew] to be defective and dangerous.'" *Goulet v. Whitin Mach. Works, Inc.*, 399 Mass. 547, 554 (1987), quoting from *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983). The plaintiff was entitled to litigate his breach of warranty claim, and the defendant was entitled to assert its defense to that claim. See *Allen* v. *Chance Mfg. Co.*, 398 Mass. 32, 34 (1986).

The second jury trial began on October 26, 1987. There was evidence that the plaintiff, on the day of his injury, was operating a carding machine. The machine, which cleans or combs fibers, consists of two huge cylinders, one larger than the other. The outer surface of the larger cylinder, which runs at approximately 600 revolutions per minute, is made up of thousands of thin, short wires which stand straight up, like small spikes. The material being processed occasionally builds up on the spikes, and periodic cleaning of the cylinders is necessary. When the machine required cleaning, several alternatives were available, including calling "card fixers," employees whose job it was to clean the machine. An alternative was to open the "stripper door" while the machine was in operation[1] and use an air hose on the rotating cylinder, the choice made by the plaintiff. The accident occurred when the air hose used by the plaintiff caught in the cylinder, and the plaintiff's arm was drawn into the very narrow space (twenty or thirty one-thousandths of an inch — the thickness of a credit card) between the spiked cylinder and its casing.

On examination by his own counsel, the plaintiff testified that he knew that by using an air hose he could be injured, but he "never dreamed" that he risked losing his arm. On

---

[1]The ability to open the stripper door while the machine was in operation was identified as the design defect at the first trial. See special question number two quoted in the text, *infra*.

examination by defendant's counsel the plaintiff admitted that he knew he risked "serious injury to his hand," such as the loss of several fingers.

The case was submitted to the jury on three special questions:

Question No. 1: "Did the plaintiff know that the carding machine was defective in that the stripper door could be opened while it was in operation thereby exposing a rotating cylinder which was dangerous to a person who got his hand too close to it?"

Answer: "Yes"

Question No. 2: "Did the plaintiff know that he could be seriously injured if he placed his hand too close to the rotating cylinder?"

Answer: "No"

Question No. 3: "Did the plaintiff voluntarily and unreasonably proceed to use the machine in the particular method which he cleaned it?"

There was no answer to Question No. 3 because the jury were instructed not to answer it if their answer to Question No. 2 was in the negative.

Judgment was entered in the amount of $225,000 (the original verdict),[2] with interest and costs. The defendant, having previously failed in its motion for a directed verdict, moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. See Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). The motion was denied, and the defendant appealed. Finding no error, we affirm the denial of the motion.

Question number two having been answered in the negative, the jury never reached the third question dealing with an essential element of the defense: the possible unreasonableness of the plaintiff's conduct. In the absence of the jury's determination that the plaintiff's conduct was unreasonable, see *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. at

---

[2]The comparative negligence statute, G. L. c. 231, § 85, is inapplicable to claims for breach of warranty. See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. at 353-357.

355, judgment for the defendant cannot, in any event, be ordered. We consider only the defendant's motion for a new trial. We will reverse a judge's decision denying a new trial only for a clear abuse of discretion. *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343 (1981). Moreover, the refusal to grant a new trial will not be reversed unless the denial "appears . . . inconsistent with substantial justice." Mass. R.Civ.P. 61, 365 Mass. 829 (1974).

The defendant's argument for a new trial is twofold: (i) the jury's negative answer to the second question cannot be harmonized with the evidence; and (ii) the jury's answer to the second question cannot be harmonized with the judge's instructions.[3]

The defendant is correct in pointing out that at numerous points in his testimony the plaintiff admitted that by holding the air hose too close to the rotating cylinder he knew that he would be risking "serious injury." He also admitted that he knew he was risking serious injury to his hand. But earlier, on examination by his own counsel, he testified as follows:

Q. "At the time you were working on the . . . line . . . , when you say you knew you could be seriously injured, what type of injuries did you contemplate in saying serious injury?"

A. "I could have badly bruised myself. I could have even lost a finger."

Q. "At any time, did you consider that you could lose an entire arm?"

A. "No, Ma'am."

With considerable vigor the defendant argues that the plaintiff's admission that he knew he could be seriously injured by holding the air hose too close to the cylinder required an affirmative answer to the second question for two reasons. First, the plaintiff's lack of knowledge of the danger, or risk, of the *specific* injury he subsequently suffered is le-

---

[3]The defendant also argues that certain "concessions" made by the plaintiff's counsel were binding on the plaintiff. There is no merit to the argument. The defendant refers merely to colloquy between counsel and the judge in the course of exploring a legal question.

gally irrelevant; second, the plaintiff's admission that he knew he risked "serious injury" is the kind of admission that is binding on the plaintiff.

We think neither argument is persuasive. The starting point is the holding in *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. at 355, that "the only duty imposed on the user is to act reasonably with respect to a product which he knows to be defective and dangerous." The jury must first determine whether the plaintiff knew that the machine was defective. Next, the jury must determine whether the user knew, if he operated the machine, that the defect in the machine created a danger to the user. Knowledge of a defect does not necessarily imply knowledge of the danger created by the defect. See *Allen* v. *Chance Mfg. Co.*, 398 Mass. at 34 (the defendant must prove "that the plaintiff knew of the product's defect *and* its danger. . .") (emphasis added); *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 63 (1988); Prosser & Keeton, Torts § 68, at 487 (5th ed. 1984). See also *Garcia* v. *South Tucson*, 131 Ariz. 315, 319 (Ct. App. 1981) ("A general knowledge of 'a danger' is not sufficient, but rather plaintiff must have actual knowledge of the specific risk which injured him and appreciate its magnitude").

The jury must then proceed to consider the magnitude of the danger perceived by the plaintiff and whether the plaintiff's injury fell within the scope of that danger. Only by determining the magnitude of the risk which the plaintiff knew he faced can the jury determine whether the plaintiff acted "reasonably" in using a machine he knew to be defective. Proof that the plaintiff voluntarily used a defective machine with knowledge that there was a danger that he might sprain his wrist provides no defense when the actual risk — what in fact occurred — was an injury so severe as to require an amputation. See *Fahey* v. *Rockwell Graphic Sys., Inc.*, 20 Mass. App. Ct. 642, 650 (1985) (directed verdict for the defendant reversed; plaintiff testified that he knew there was "some danger," but he did not know "that his arm would be pulled into the press and was unaware of the magnitude and gravity of harm that would ensue"); *Allen* v. *Chance Mfg.*

*Co.*, 873 F.2d 465, 473 (1st Cir. 1989) (knowledge of the risk of flying chips hitting hands and arms is not knowledge that plaintiff was risking injury to his eyes from flying chips). See Restatement (Second) of Torts § 496D comment e (1965) ("Whether the plaintiff knows of the existence of the risk, or *whether he understands and appreciates its magnitude* and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court") (emphasis added). See Prosser & Keeton, *supra* § 68, at 487. To be sure, knowledge that one is risking the loss of a finger may well be a defense to the loss of two fingers, but in general it is the function of the jury to determine from the evidence, and upon proper instructions, the magnitude of the danger[4] which the plaintiff knows can arise from his use of the defective machine, and whether the plaintiff unreasonably used the machine in ways that put him voluntarily within the scope of that perceived danger. If the jury finds that the injury that occurred lies beyond the magnitude of the danger the plaintiff perceived, then the defendant has not sustained his burden of proof.

The case is close because question number two inquired only whether the plaintiff knew he risked "serious injury." The court, in effect, had limited the jury's inquiry by defining "danger" to mean "serious injury."[5] No doubt this was

---

[4]"Danger" means "[e]xposure or vulnerability to harm or risk . . . [and] is applicable to *any* potentially harmful situation . . ." (emphasis added). American Heritage Dictionary 365 (2d College ed. 1982).

[5]The judge might better have asked the jury whether the plaintiff knew that the defect in the machine created "a danger" to the plaintiff if he held his hand too close to the rotating cylinder, leaving it to a special verdict question and later instructions to point out that for the defendant to sustain its burden the injury received must fall within the magnitude of the danger perceived by the plaintiff. By not directing the jury's attention to the possibility of degrees of danger, and by using the ambiguous phrase "serious injury," the judge created uncertainty in the minds of the jurors, and the jury returned with a request for a definition of the word "serious."

Rather than focusing only on what is "serious" injury, the jury should have been directed to consider the relationship between the perceived risk and the injury received. See note 4, *supra*. There was, however, no objection to the question, and the defendant has not raised the issue on appeal. We deal with the case in the setting in which it has been presented.

because the parties had agreed or understood that the loss of an arm above the elbow was a serious injury, and thus it became appropriate for the jury to determine whether the plaintiff knew that he risked being "seriously injured" by opening the stripper door while the machine was operating and placing his hand too close to the rotating cylinder.

The jury answered the second question in the negative, evidently accepting the version of the plaintiff's testimony that he did not know that by opening the stripper door while the machine was in operation he risked losing his arm above the elbow. The jury had implicitly decided, with adequate reason, that the admitted risk of injury to the plaintiff's hand, compared to the risk of the loss of an arm, was a different order of magnitude, or "seriousness." The plaintiff's testimony that he "never dreamed" he could lose his arm was an adequate foundation for the conclusion that the plaintiff did not know he risked "serious injury." The fact that he admitted knowing the risk of *some* danger does not preclude his recovery for the loss of his arm.

The defendant argues, separately, that the plaintiff's testimony was so overwhelmingly confessional of his knowledge of the risk of serious injury that there would be an injustice to permit any result other than judgment for the defendant. The defendant has in mind such cases as *Fraser* v. *Fraser*, 334 Mass. 4, 6 (1956) ("It is a well settled rule of evidence that a party is bound by his testimony concerning his knowledge . . . of which he alone may be presumed to have personal information. . ."). That rule does not bear on this case where the plaintiff's testimony was, at worst, inconsistent. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 (1978) ("Although . . . [the plaintiff's] testimony concerning his awareness of the danger of the packer panel was contradictory, resolution of conflicting testimony is the jury's function").

Finally the defendant argues that the jury's answer to the second question cannot be harmonized with the judge's instructions. The judge instructed the jury that a "serious injury," see note 5, *supra*, is "something other than trifling.

Where the line is drawn you have to say." Again, when the jury asked for a definition of "serious," the judge explained that the permanent loss of "of any important member" of the body is a serious injury. As we concluded earlier, the jury must have, and certainly could have, concluded that the plaintiff did not know that he risked the loss of his arm. With that in mind, the judge's instructions made it clear that the second question could be understood to permit a negative answer. There was no abuse of discretion by the trial judge in denying the defendant a new trial.

> *Order denying motion for judgment notwithstanding the verdict or, in the alternative, for a new trial affirmed.*