Cowin, J.
Finding of Fact, Rulings of Law and Order for Judgment*
This case arises from the sale by the defendant Tom O’Brien Nissan, Inc. (“O’Brien Nissan”) to the plaintiff Peter S. Whittenberger dba Pleasant Street Auto Sales (“Whittenberger”) of a purported 1975 Mercedes 450 SL which in fact was a 1972 Mercedes 350 SLC (“the Mercedes” or “the car”). Whittenberger claims breach of contract, fraud, negligent and intentional misrepresentation, breach of implied warranty and violation of G.L.c. 93A.[1] O’Brien claims breach of contract, misrepresentation, fraud and breach of implied wanranty against third-party defendant Noreen O’Shea (“Ms. O’Shea”).
A juxy-waived trial was held on January 3 and January 4, 1995. The plaintiff called the following witnesses: Daniel Egnet (“Egnet”) an agent of the National Insurance Crime Bureau; David Presutti (“Presutti”) who acted as an agent of Whittenberger in the purchase of the Mercedes; John Sullivan (“Sullivan”) the general manager of O’Brien Nissan at all *516 relevant times and Paul J. O’Sullivan (“O’Sullivan”) the general sales manager of O’Brien Nissan. No one else called witnesses. At the conclusion of trial, plaintiffs counsel testified and submitted exhibits regarding his fees and costs and argument was had thereon.
FINDINGS OF FACT
Based upon the testimony of the witnesses and the exhibits at trial, the reasonable inferences to be drawn therefrom and evaluation of the witnesses, I make the following findings of fact.
1. Plaintiff Peter S. Whittenberger dba Pleasant Street Auto Sales is a new/used car dealer with a usual place of business in Watertown, Massachusetts.
2. Defendant and Third-Party Plaintiff Tom O’Brien Nissan, Inc. is a new/used car dealer with a usual place of business in Quincy, Massachusetts.
3. Both Whittenberger and O’Brien Nissan are in the business of buying and selling used cars and are in the conduct of trade or commerce. See G.L.c. 93A, §2.
4. On September 22, 1990 Ms. O’Shea traded to O’Brien Nissan a Mercedes that she owned. Ms. O’Shea is a consumer under G.L.c. 93A. John Sullivan, general manager of O’Brien Nissan, handled this transaction. The car traded in by Ms. O’Shea was described on Ms. O’Shea’s registration papers as a 1975 Mercedes 450 SL with a vehicle identification number (“VIN number”) of 10702412011108. O’Shea received a trade-in allowance of $5,000.00 for her automobile.
5. The VIN number on the registration papers Ms. O’Shea gave to O’Brien Nissan contained 14 digits. All Mercedes have 14-digit VIN numbers. Ms. O’Shea sold-the car as a 1975 Mercedes 450 SL model; in fact, the car was a 1972 Mercedes 350 SLC. Sullivan, who handled the transaction for O’Brien Nissan, was not familiar with Mercedes automobiles and could not tell one Mercedes model or year automobile from another.
6. O’Brien Nissan failed to check the VIN number on the plate located on the windshield to ascertain that it corresponded to the VIN number on the registration papers that Ms. O’Shea provided with that car.
7. No one at the O’Brien Nissan organization ever inspected the VIN plate located on the windshield of the Mercedes and instead relied exclusively on the written registration provided by Noreen O’Shea. O’Brien Nissan never even checked to see if the color of the automobile was the same as the color on the registration.
8. There was testimony that the custom in the trade of automobile dealers is to rely upon the VIN number as stated on a registration or a title of a car being traded without actually visually inspecting the VIN plate number located on the vehicle. However, I do not find this testimony credible.
9. Had O’Brien Nissan taken even a few minutes to compare the VIN number on the papers Ms. O’Shea had given them with the VIN number on the windshield, the discrepancy would have been obvious.
10. This Mercedes automobile was in poor condition when it was taken in trade. For that reason, O’Brien Nissan decided to “wholesale" the vehicle rather than sell it retail so that the car would not be covered by any warranties. The custom in the trade is for vehicles sold on a wholesale basis to carry no warranties regarding the condition of the car.
11. Presutti expressed interest in purchasing the Mercedes. Presutti was told by O’Brien Nissan that the car would not be sold retail but would only be sold on a wholesale basis. This meant that it had to be sold to another dealer with a commercial class II license. Presutti thus arranged to purchase the vehicle through Whittenberger who had a commercial class II license. Presutti and Whittenberger had used this procedure to purchase cars in the past.
12. Presutti was acting at all relevant times on behalf of Whittenberger and as its agent.[2] All receipts and bills of sale for the Mercedes were made out by O’Brien Nissan, Inc. to “Pleasant Street Auto Sales dba 106 Pleasant Street, Watertown, MA.” The name “David Presutti” is written above this name and address on one of the documents.
13. In late September, 1990, Presutti visited O’Brien Nissan and discussed purchasing the car with O’Sullivan, O’Brien Nissan’s general sales manager. Presutti was given an opportunity to inspect the vehicle in the wholesale lot. He inspected the car alone and was not restricted in his inspection in anyway. He did not examine the VIN number on the plate on the windshield. Thereafter, Presutti agreed to, and did, purchase the automobile wholesale through Whittenberger for $5,000.00. The evidence is conflicting as to whether Presutti had the registration with him at the time he inspected the car. In any event, he received the registration at the time of sale.
14. O’Brien Nissan sold the car to Whittenberger (Presutti) for $5,000 as a 1975 Mercedes 450 SL.
15. After Presutti purchased the automobile he decided to resell it. Preparatory to doing so, at some time in 1991, he caused it to be examined by a mechanic. This person informed Presutti that the car was not what it was purported to be. Presutti and/or Whittenberger then questioned the title to the automobile.
16. Sometime in 1991, the Mercedes was inspected[3] by Egnet of the National Insurance Crime Bureau, a non-profit organization funded by insurance companies. Upon looking at the VIN plate on the windshield, Egnet saw that the VIN number was incorrect. Instead of the fourteen VIN numbers that all Mercedes have, he saw that the plate contained only the last eight numbers. The plate appears to have only eight numbers. The first six numbers could be seen but only with great difficulty as they appeared in a very faded fashion. Upon further investigation, Egnet found other and different VIN numbers on various motor components. This led Egnet to investigate further. He eventually concluded that the vehicle was not *517 a 1975 Mercedes 450 SLbut, in fact, a 1972 Mercedes 350 SLC that had been stolen in 1987.[4]
17. There was no direct evidence of the condition of the VIN plate on this automobile in September of 1990 when it was sold from O’Shea to O’Brien Nissan and then from O’Brien Nissan to Pleasant Street Auto. The only evidence of the VIN plate’s condition was in June of 1991 when it was inspected and removed by Egnet. Thus, the evidence is insufficient to determine when the VIN number was in fact altered. Nevertheless, O’Brien Nissan was negligent and acted with reckless disregard for the truth when it did not check the VIN plate.
18. The sale of a 1972 Mercedes 350 SLC as a 1975 Mercedes 450 SL is a breach of implied warranty.
19. By failing to check the VIN number, O’Brien Nissan committed a negligent misrepresentation when it sold the car as a 1975 Mercedes 450 SL. This was not an intentional misrepresentation by O’Brien Nissan.
20. Upon learning that the Mercedes was not the car it was purported to be, Whittenberger requested that O’Brien refund the purchase price. O’Brien refused to do so. Said refusal was an unfair or deceptive practice.
21. In March, 1991, Presutti’s attorney sent O’Brien Nissan a demand letter pursuant to G.L.c. 93A, §9. The demand letter specified the claimed violations of said statute.
22. O’Brien Nissan’s attorney responded to Presutti’s letter by a letter dated April 1, 1991. O’Brien Nissan’s letter stated that it had not acted in an unfair or deceptive manner. The letter stated that the VIN number:
“on the dashboard of this particular 1975 Mercedes was the same VIN as on all the registry papers which the prior owner presented to Tom O’Brien Nissan, Inc. Tom O’Brien Nissan, Inc. would have had no reason to, and did not, look any further to identify whether there were any other VIN numbers anywhere else in the automobile. It is my client’s position that they would have had no occasion or cause to look any further than the VIN on the dashboard since it corresponded with the registry papers.”
These statements were totally contradicted at trial by the testimony of Sullivan and by the entire trial position of O’Brien Nissan. All evidence at the trial was, and I find, that O’Brien Nissan had never looked at the VIN number on the windshield and that its practice was, and is, not to do so. I assume that this letter was sent at the direction of, and according to, the information provided by O’Brien Nissan. Accordingly, O’Brien Nissan, by providing this information for a letter to be sent to Presutti’s attorney, committed an unfair and deceptive practice under G.L.c. 93A. It was not merely “sloppy” or negligent.
23. On June 22, 1991, Egnet and a Massachusetts State Trooper from the Governor’s Auto Theft Task Force informed the general manager of O’Brien Nissan that the car O’Brien Nissan had sold to Whittenberger was in fact stolen. O’Brien Nissan’s response was that it had taken the car in good faith. O’Brien Nissan gave Egnet the papers for the car that it had retained that contained the 14-digit VIN number.
24. The parties stipulated, and I so find, that at all relevant times Ms. O’Shea had no knowledge that the car had been stolen.
25. On January 16, 1993, this case was tried before a judge of the Waltham District Court. On January 22, 1993, judgment was entered for the plaintiff on “Counts 2, 3, (negligent misrepresentation), 4, 5, 9 and 10 of the Complaint” and damages were assessed “in the sum of $15,524.82, ($5,524.82, Attorneys Fees, $5,000.00 2X Damages).” Judgment was also entered for the third-party plaintiff O’Brien Nissan on Counts I and IV of the third-party complaint (breach of contract and breach of implied warranty) with damages assessed in the amount of $5,000. The District Court found for the third-party defendant Ms. O’Shea on Counts II and III (misrepresentation and fraud) of the third-party complaint.
26. O’Brien Nissan breached its contract with Whittenberger.
27. The implied warranty of good title was not excluded or modified by usage of the trade or course of dealing.
28. Whittenberger did not act unreasonably in relying on O’Brien Nissan’s representation as to the year, model and make of the Mercedes.
29. O’Brien Nissan’s misrepresentation regarding the year and model of the Mercedes was made with reckless disregard as to the truth or falsity of the statement, that is, O’Brien Nissan did not know whether the asserted facts were true or false.[5]
30. Evidence was submitted of storage fees of $10,250.00 charged by Pleasant Street Garage for holding the Mercedes from January until May, 1991[6] (205 days at $50 per day for inside space). I do not find that these storage charges were reasonably foreseeable consequential damages.
31. In regard to attorney’s fees, I have considered the submissions of the parties, the testimony of plaintiff and the arguments of both counsel. Plaintiffs attorney’s fees are reasonable both in terms of time expended and his hourly rate of $150.00.
32. Defendant disputes six areas of plaintiffs time: (a) 15.20 hours spent on prosecuting a separate but identical action brought by Presutti. This was a separate action begun to protect Presutti because the statute of limitations on the claim was about to expire. At the time, plaintiff was not certain who the proper party was. Defendant claims that Presutti could have simply intervened in the present case. This amount of time is not reasonably necessary and should not be imposed on defendant. It is, therefore, to be excluded from the award of attorney’s fees. The 15.20 hours and $244.25 of costs for the Presutti suit are denied, (b) Plaintiffs trustee attachment of March, 1993 — 12.8 hours. Defendant claims he had substantial assets and that trustee attachment was unnecessary and *518 was eventually vacated. Plaintiff supports the trustee attachment as necessary in the event defendant dissolved its corporation. This was a reasonably necessary step, (c) Motion for summary judgment — 8.5 hours. This motion would have virtually no likelihood of success despite the District Court finding. The G.L.c. 93A claim is a factual one. This motion was not reasonably necessary and the time expended on it is deducted, (d) Quincy Licensing Board — 4 hours. Plaintiff agrees that this time is to be deducted, (e) Motion for sanctions — 3.5 hours. Since this was a motion filed by defendant for sanctions against plaintiff for behavior of plaintiff which could have been avoided, this time should be deducted, (f) Trial transcripts — $459.00. Obtaining the District Court trial transcript was not an unreasonable expense despite the fact the transcript was not actually used at trial. It is a useful tool.
Plaintiffs total time on the instant suit (apart from the Presutti action) is 108 hours as detailed in his time sheets plus 4.5 hours at trial on January 3; 4 hours of work on January 4 after court; and 1.5 hours at trial on January 4, totalling 118 hours. From this total, 16 hours (summary judgment, Quincy Licensing Board and motion for sanctions) are to be deducted. This leaves 102 hours which I find were reasonably necessary. See Waldman v. American Motor Honda Co., 413 Mass. 320 (1992). His costs were $1,840.60. Total fees and costs are $17,140.60.
DISCUSSION
It is clear to this Court that the conduct of O’Brien Nissan in this case is precisely the type of unfair business practice that G.L.c. 93A is designed to encompass. O’Brien Nissan was negligent in not checking the VIN number of tihe car it purchased in trade from Ms. O’Shea against the VIN number on the registration she presented. It further acted with reckless disregard for the truth or falsity of the representation it made to Whittenberger, that the car was a 1975 Mercedes 350 SL. This total lack of concern for the truth may be designed simply to save the time of salespeople so that their time can be used to sell other cars; it may be that the lack of concern for the truth is designed to avoid learning that stolen cars are in fact being passed in trade. In any event, it clearly is an unfair business practice to sell an automobile as a certain year, model and make without even checking the windshield VIN number with that on the registration to ascertain that the car is indeed the purported year, model and make.[7] If, as the testimony indicated, this is the practice in the industry, it should not be. Whittenberger is entitled to rescission of the contract and double damages and attorney’s fees under G.L.c. 93A.
It is true that Presutti too could have examined the VIN number on the windshield. I have found, however, that Presutti did not act unreasonably in relying on O’Brien Nissan’s representations about the Mercedes.
The fact that Ms. O’Shea sold O’Brien Nissan a car other than what she claimed it to be entitles O’Brien Nissan to rescission of its contract with her. O’Brien Nissan seeks to recover against Ms. O’Shea under G.L.c. 93A as well. Broad though G.L.c. 93A was intended to be, it is clear firom its terms that it was not designed to encompass actions by business people against consumers. Even if G.L.c. 93A were applicable, it is one thing for a dealer to be held responsible for ascertaining that a particular vehicle is what it is purported to be. The factors are completely different for an individual consumer in an isolated transaction. Thus, O’Brien Nissan cannot recover against Ms. O’Shea under G.L.c. 93A.
This result leaves O’Brien bearing the brunt of the G.L.c. 93A damages and attorney’s fees. Given the purpose of the statute, this is not inappropriate.
In regard to the award of attorney’s fees, I have taken into consideration the fact that a certain portion of the time spent on this matter was compelled by defendant’s appeal of the case from the District Court. Thus, the Court’s normal concern for the relation of the number of hours (here over 100) to the size of the claim is reduced by the fact that some of the hours spent was forced by the defendant. It was the defendant who, unsatisfied with the District Court judgment, appealed.
RULINGS OF LAW
1. Under G.L.c. 93A, §11, Whittenberger is entitled to multiple (not more than treble and not less than double) damages if O’Brien Nissan acted “knowingly” or “willfully” in violation of §2.
2. A willful or knowing violation includes a misrepresentation made with reckless disregard as to its truth or falsity, that is, with the knowledge that the person did not know whether the asserted fact was true or false. Computer SYS. Engr., Inc. v. Qantel Corp., 740 F.2d 59, 68 (1st Cir. 1984), affirmed. Computer Sys. Eng’g, Inc. v. Oantel Corp., 571 F.Supp. 1365, 1373-75 (1983), cited in Paul J. Shaw v. Rodman Ford Truck Center, 19 Mass.App.Ct. 709 (1985).
3. G.L.c. 93A, §11 does not require the sending of a demand letter.
4. The implied warranties of G.L.c. 106, §2-314 may arise from the sale of new or used goods. Jose M. Fernandes et al. v. Union BookBinding Company, Inc., 400 Mass. 27, 33-34 (1987); see also Feragamo v. Massachusetts Bay Transp. Auth., 395 Mass. 581 (1985) (sale of used trolley cars was within the implied warranty of merchantability under art. 2 of the UCC).
5. A warranty of title can be excluded or modified by circumstances which give the buyer reason to know that the seller is only selling such title as he or a third party may have. G.L.c. 106, §2-312(2). No circumstances give Presutti reason to know O’Brien was selling only such title as he or a third party had.
6. An implied warranty can be excluded or modified by a course of dealing or a course of performance or usage of trade. G.L.c. 106, §2-316(3)(c).
7. The comparative negligence statute, G.L.c. 231, §85 has no application to breach of warranty actions. *519 Goulet v. WhitinMachine Works, Inc., 30 Mass.App.Ct. 310, 312, n.2 (1991), citing Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 353-57 (1983).
8. The plaintiff is entitled to recover damages equal to the difference between the value of what he received and the purchase price plus any other pecuniary loss suffered as a consequence of his reliance on the misrepresentation of O’Brien Nissan. BostonFive Cents Sao. Bank v. Brooks, 309 Mass. 52 (1941); JosephDanca v. Taunton Savings Bank, 385 Mass. 1, 9 (1972).
9. Consequential damages include those that might reasonably be expected to result from reliance upon the misrepresentation. Id. There was no evidence that storage charges for the Mercedes were reasonably expected to result from reliance upon O’Brien Nissan’s misrepresentation.
10. The plaintiff may recover both general and consequential damages for breach of contract. General damages are those damages which “flow according to common understanding as the natural and probable consequences of the breach.” Boylston Hous. Corp. v. O’Toole, 321 Mass. 538, 562-63 (1947). Special or consequential damages are further losses that “ ‘may be presumed to be in the contemplation of the parties at the time the contract was made’ by reason of special circumstances known to the parties.” Id. at 563.
11. The District Court decision is prima facie evidence.
ACTION ON REQUESTS FOR RULINGS BY PLAINTIFF
1. Allowed.
2. Allowed.
3. Allowed.
4-9. Requests for findings of fact.
10-11. Allowed.
12. Denied as inapplicable on the facts as found.
13-14. Allowed.
BY DEFENDANT
The requests are submitted in improper form because they are combined with requests for findings. As such, I decline to act on them, except to the extent that the requests are consistent with the discussion section or rulings made herein.
BY THIRD-PARTY DEFENDANT
8.[8] Request for finding of fact.
9. Request for finding of fact.
10. Request for finding of fact.
11. Request for finding of fact.
12. Allowed.
13. Request for finding of fact.
14. Not relevant in view of Court’s action.
15. Allowed.
16. Denied.
ORDER
Judgment is to enter for plaintiff on Counts 2,[9] 3 (negligent misrepresentation)[10] and 5 in the amount of $5,000.00. Judgment for the defendant on Counts 3 and 4 (fraud and rescission). Judgment for plaintiff on Counts 7 and 9 (G.L.c. 93A) in the amount of $10,000 plus attorney’s fees and costs of $17,140.60. Counts 6 and 10 were withdrawn and are dismissed.[11] Total judgment hereunder for the plaintiff is to be $27,140.60 (which includes double damages under G.L.c. 93A and attorney’s fees and costs).
Judgment for the third-party plaintiff on Counts I and IV of the third-party complaint against the third-party defendant in the amount of $5,000.00. Judgment for third-party defendant on Counts II and III of the third-party complaint.

Editor’s Note: See the Amended Findings of Fact, Rulings of Law and Order for Judgment immediately following this opinion.

The Complaint contains a Count (Count 6) entitled “Violation of Public Policy” but plaintiff conceded that Count 6 only restates the G.L.c. 93A count. Thus, it is treated as withdrawn. Count 10 for monies had and received was withdrawn in open court.

The parties stipulated that Presutti was the plaintiffs agent for purposes of the transaction at issue.

It is not clear from the evidence when this inspection occurred.

There was no evidence regarding the relative values of the two cars. Common knowledge is that a 1975 automobile is substantially more costly than a 1972. The difference in price is not essential to my decision. There was also no evidence as to the physical differences between the two cars and whether car dealers would ordinarily recognize the difference in characteristics between a 1972 and a 1975 Mercedes.

See ruling No. 2.

It was not until May, 1991 that the rightful owner of the car was determined.

A misrepresentation made with reckless disregard for the truth or falsity of the statement is a willful or knowing violation of G.L.c. 93A See ruling No. 2.

Nos. 1-7 are labeled “Findings of Fact.”

Count 1 contains only factual allegations.

The Complaint contains two counts numbered “3." One is titled “Fraud and Rescission,” the other “Negligent Misrepresentation.” I have entered judgment for defendant on the former and for plaintiff on the latter.

The Complaint does not contain a Count 8.