Muse, Christopher J., J.
On September 26, 2006, the plaintiff, Alexander Nichols, commenced an action before this Court pursuant to G.L.c. 249, §4. There, he sought judicial review of an Order of Conditions issued by the defendant, the Brewster Conservation Commission (“Commission”), denying the plaintiffs application. On July 2, 2007, this Court conducted a hearing on the parties’ respective Motions for Judgment on the Pleadings. During hearing, with the agreement of the parties, the Court remanded the Commission’s Order of Conditions, in order to reconsider certain stipulated issues. After reconsideration, the Commission denied the plaintiffs application in an Order of Conditions issued on September 10, 2007. Plaintiff filed a Complaint After Remand seeking judicial review of the Commission’s Order of Conditions denying his application. Before this Court are the plaintiffs motion for judgment on the pleadings and the defendant’s cross motion for judgment on the pleadings. For the reasons that follow, the plaintiffs motion for judgment on the pleadings is DENIED and the defendant’s cross motion for judgment on the pleadings is ALLOWED.

BACKGROUND

The record before this Court establishes the following facts. The plaintiff is the owner of Lot 9 on Six Penny Lane in Brewster, Massachusetts. Lot 9 has 180 feet of frontage on Six Penny Lane and extends away from the street for approximately 180 feet. Toward the front of Lot 9, there is isolated land subject to flooding (“ISLF”) surrounded by isolated vegetative wetland (“IVW”). The IVW extends beyond the southerly boundary line, and both the IVW and ISLF extend within six feet of the northerly lot line. In the northwest comer of the wetland area, there exists an area of wetland that has been filled over time. Essentially, the wetlands extend over the front third of Lot 9; the remaining back two-thirds of lot 9 áre upland. The plaintiff also owns 83 Six Penny Lane, which abuts Lot 9 to the west. 83 Six Penny Lane has been improved with a dwelling.
In May of 2006, the plaintiff filed a Notice of Intent (“NOI”) with the Brewster Conservation Commission under the Massachusetts Wetlands Protection Act and the Town of Brewster Wetlands Protection Bylaw. In his NOI, the plaintiff sought to construct a single-family dwelling and septic system upon Lot 9 within the fifty to one hundred foot buffer zone around the ISLF and IVW. The plaintiff sought further to build a gravel driveway within the ISLF and IVW. In order to accomplish this, the plaintiff proposed to fill 65 square feet of the IVW to an elevation of 14.6 feet and using pervious materials in combination with an earth berm and a shrub hedge. To compensate for this filling, the plaintiff proposed to replicate 80 square feet of wetland in the northwest comer of the wetland area by removing existing fill.
Section 3.02(3) of the Brewster Wetlands Regulations provides:
No activity, other than the maintenance of an already existing structure, which will result in the building within or upon, removing, filling, or altering of a vegetated wetland, or within 50 feet of a vegetated wetland, shall be permitted by the Conservation Commission, except for activity which is allowed under a variance from these regulations granted pursuant to Section 5.01.
Section 5.01 of the Brewster Wetlands Regulations provides that variances are intended to be granted only in rare and unusual cases. Section 5.01 provides further that variances shall be granted only for the following reasons and upon the following conditions:
*582 a) mitigating measures are proposed which contribute to the protection of the resource values identified in the Wetlands Bylaw;
b) the Conservation Commission finds no reasonable alternatives for such a project within the proposed site; and
c) there will be no adverse impact from the proposed project.
d) that the project is necessary to accommodate an overriding public interest or that it is necessary to avoid a decision that so restricts the use of property that it constitutes an unconstitutional taking without compensation.
Section 5.01 also places the burden on the project proponent seeking a variance to demonstrate not only that the project will not result in any adverse impact to interests defined under the Brewster Wetlands Bylaw, but that there is no feasible alternative. To satisfy this burden, the project proponent must include an alternative analysis in its variance request.
On May 23, 2006, the Commission held a public hearing. There, the Commission discussed the plaintiffs NOI. The hearing, however, was continued until June 20, 2006, to allow the Commission time to research the history of Lot 9, and the plaintiff time to revise his proposal to reflect soil elevation profiles and a shrub hedgerow along the proposed gravel driveway. Because the Commission lacked a quorum on June 20, 2006, the hearing was again continued until July 11, 2006.
Subsequently, Bennett & O’Reilly, a corporation providing engineering, environmental, and surveying services, submitted a letter to the Commission outlining its findings after having reviewed the plaintiffs NOI on behalf of an abutter of Lot 9. There, Bennett & O’Reilly opined that “the proposed replication of the wetlands so as to provide access for a vacant lot . . . [was] a first for the Brewster Conservation Commission and the bylaw. Because of this, Bennett & O’Reilly suggested a number of elements for the Commission to consider when reviewing the plaintiffs NOI:
Where is the benefit in the replication application before you? What is the extended benefit to wildlife habitat, groundwater quality and groundwater protection in allowing the alteration of the wetland resource on a vacant piece of property?
What is the ratio of wetland alteration being proposed?
What is the proposed method of dealing with surface run-off from the proposed driveway?
What kind of buffer is being provided between the edge of the driveway and the new edge of the wetland area? What protection is being offered as protection to the wetland resource, when the underground utilities are installed within the driveway area?
Additionally, Bennett & O’Reilly brought to the Commission’s attention a similar project that had obtained approval. There, Bennett & O’Reilly noted, the “Commission allowed the replication and relocation for the [ Iproject, because in the Commission’s view, as supported by the application’s information and the Order of Conditions, the finished wetland resource that resulted from the work was more beneficial to the wildlife habitat, water quality and groundwater protection.” In allowing that project, Bennett & O’Reilly noted further, the Commission “required a 2:1 enlargement ratio of the wetland resource area.”
In response to Bennett & O’Reilly’s letter, the plaintiffs representative, wetlands consultant Lynne Whiting Hamlyn, submitted a letter addressing the suggested considerations, as well other abutters’ comments. That letter provides;
The project is a two-bedroom single-family dwelling with no access to the buildable portion of the property other than by filling a small area of [IVW] for the driveway. A denial of the application would render the property unbuildable.
The lot’s isolated wetland probably used to discharge into the large wetland system across Lower Road via a culvert. That discharge outlet has been discontinued which has caused ponding on the locus. The dwelling can be located outside of the fifty-foot buffer to the wetland with a soil absorption system located outside of the 100-foot buffer zone (with a variance to the rear property line). The site conditions are rare and unusual.
The Nichols project proposed to fill a 65 square foot area of an IVW. The mitigation area for the Nichol’s project is proximate to the area of impact and Nichols would remove 80 square feet of historic fill within the IVW and restore that portion of the wetland to its pre-existing condition and elevation. This allows for compensatory storage of floodwaters and growth of wetland vegetation. Mitigation is at an approximate 1:1.2 ratio. Increasing the mitigation area creates greater noncompliance with environmental regulations because it would move septic system components closer to wetland.
A shrub buffer is proposed for the wetland side of the driveway to increase plant density and diversity near the resource area and enhance the interests of wildlife habitat, groundwater quality and groundwater protection. Shrub buffer species are to be chosen from the list of Fresh Water Resource Buffer Zone Trees and Shrubs prepared by the Committee of the Barnstable County Extension Service as guidelines in planting the 100-foot buffer zone to a wetlands resource area. Development of the property would preclude its use by neighbors as a deposition site for their lawn debris.
The driveway is to be of pervious materials with an earth berm along its wetland side. After construction of the drive, the Applicant’s landscaper and the *583 Conservation Administrator can meet on site to identify specific areas of planting and species choices.
The septic system will be mounded to comply with the Title 5 regulation that requires a five-foot vertical separation between the bottom of the soil absorption system for the septic discharge and adjusted high groundwater. Providing a five-foot treatment zone for septic effluent ensures that the system meets the performance standard relative to the prevention of pollution and water quality.
An abutter’s letter says his basement is wet; that abutter’s basement is wet because its interception with groundwater, not because of the flooding on the Nichols property. The proposed construction would not displace surface water onto neighboring properties because compensatory storage has been provided for filling the small wetland area. The house and septic system are proposed above elevation 17 feet; the elevation of ponding water is at 14.3, as measured in the spring of 2005.
Hamlyn closed by stating that the project hearing was continued on May 23, 2006 for two reasons: (1) the submittal of a revised plan showing a K-turn for the drive, elevations of the wetland flags and standing water and notation of the proposed shrub hedge along the wetland side of the drive; and (2) to allow the Conservation Administrator to research whether or not the proposal was categorically denied under another town department.
At its hearing on July 11, 2006, the Commission raised concern regarding the proposed replication ratio; specifically that it was less than the required 2:1. The Commission also raised concern that the berm for the proposed driveway would “creep out in to the wetlands so the actual loss [would] be more than 65 feet.” Shortly thereafter, on July 31, 2006, the Commission issued an Order of Conditions denying the plaintiffs proposal. In its denial, the Commission provided the following:
While the septic system is shown to be constructed outside the 100’ from these wetlands, sufficient information relative to the complete system construction was not submitted to the Commission and, as a result, the Commission could not determine whether any portion of the system components would be located within the jurisdictional area.
The Commission finds that mitigation proposed by the applicant of a replicated wetland area does not serve to mitigate from the fact that the driveway will still be constructed on a filled wetland with no surrounding protective buffer. Thus, the proposed mitigation will not serve to contribute to the protection of the resource values nor will it sufficiently mitigate for the adverse impacts that will be caused by the proposed construction. Furthermore, contrary to the assertions by the applicant’s expert that there “is no other alternative to access the buildable portion of the property,” the applicant owns the abutting property directly to the East and the two lots share a 50’ property line. Accordingly, there are alternative access options that have not been considered by the applicant and a regulatory taking does not result due to the Commission’s vote to Deny this project.
On September 26, 2006, the plaintiff commenced this action by filing a complaint with this Court. As discussed above, the plaintiff seeks judicial review pursuant to G.L.c. 249, §4 of the Commission’s Order of Conditions denying the plaintiffs application. On July 2, 2007, this Court conducted a hearing on the parties’ respective Motions for Judgment on the Pleadings. After hearing, the Court remanded the Commission’s Order of Conditions, with an order to reconsider the issues related to the following supplemental materials:
1. The Plaintiff will submit additional information regarding the feasibility of alternative access using the Plaintiffs contiguously owned parcel, 83 Six Penny Lane, Brewster, Massachusetts.
2. The Plaintiff will submit additional information concerning the proposed fill, earth berm and shrub hedge to prevent the proposed driveway from creeping further into the wetland resource area.
3. The Plaintiff, with guidance from the Conservation Commission, will propose alternative replication and mitigation measures in an effort to satisfy the Commission’s request for 2:1 replication ratio beyond those already proposed, to include, but not be limited to enlargement of the wetland area elsewhere on the lot, mitigation of another sort on the subject lot, or on applicant’s other lot or on public land.
Hamlyn addressed these remanded issues on behalf of the plaintiff in a letter dated July 31, 2007 and at the Commission’s public hearing on August 6, 2007. With respect to the feasibility of alternative access, the plaintiff submitted that an alternative access using his contiguously owned parcel, 83 Six Penny Lane, would require removal and reinstallation of the existing septic system. The plaintiff also submitted that the alternative access would depress the value of the 83 Six Penny Lane, as it would consume the entire back yard and through traffic would pass closely to the dwelling on it. Addressing the driveway, the plaintiff proposed to incorporate suitable landscaping edging and augment the shrub hedge to create a further barrier between the driveway and the wetland to prevent the proposed driveway from creeping further into the wetland resource area. Finally, with respect to replication and mitigation, the plaintiff proposed that his neighbor to the north renaturalize two separate areas, one 45 square feet and the other 53 square feet, currently maintained as grassland. The *584 plaintiff did not offer any information regarding mitigation on his own property, arguing that additional excavation within the ISLF is inconsistent with the bylaws because: the wetland system is densely vegetated with a diverse plant community that functions properly; little storage capacity would be created by excavation because of the water table is close to the surface; and excavation would increase the subsurface area and increase the flood area.
At the same hearing, the Conservation Administrator, Lori MacDonald, informed the Commission that research regarding Lot 9’s assessed value suggested that it has little building potential. She also informed the Commission that, based on her conversation with the Brewster Health Agent, it may be possible to relocate the septic system on 83 Six Penny Lane to provide alternative access to Lot 9. The hearing, however, was ultimately continued until August 21, 2007, to allow the plaintiff an opportunity to submit additional information regarding the remanded issues. Specifically, the Commission requested that the plaintiff submit:
A site plan showing the full layout of [Lot 9] and [the plaintiffs abutting property at 83 Six Penny Lane].
A driveway on [83 Six Penny Lane] to create access to the dwelling, as an alternative to constructing the driveway through the wetland and 50 foot buffer zone.
Relocating the existing septic system on [83 Six Penny Lane] to another area of the lot to provide access and room to construct a septic system for the subject property on [Lot 9], or
1. Constructing a septic system on [83 Six Penny Lane] using the Innovative Alternative Technology.
2. Reconstructing the existing septic system on [83 Six Penny Lane] to serve both the proposed dwelling on the subject lot and the existing dwelling on [83 Six Penny Lane].
Showing septic system and leaching field on the subject lot, showing “over-dig.”
1. Cost analysis of a [sic] conducting percolation test on subject lot.
2. Assessment for excavating in the 50-foot buffer zone or wetland for additional storage of water as mitigation for the proposed driveway on the subject property.
3. Convincing documentation that the proposed driveway and its associated impacts from continual use, will not impact the wetland area and 50 foot buffer zone.
On August 21, 2007, the Commission resumed its hearing on the remanded issues. At the conclusion of that hearing, the Commission made the following motion:
The proponent’s proposed mitigation both on and off site is not adequate and does not meet the presumptions of the Brewster Wetlands Protection Bylaw.
Alternative driveway accesses to the site and septic system are feasible, however, the proponent elected not to explore the options.
The project cannot be permitted by the Conservation Commission.
The Commission approved this motion unanimously. On September 10, 2007, the Commission issued an Order of Conditions. There, the Commission concluded that although the plaintiff had adequately addressed the issue of driveway creep, the long and short terms [sic] cumulative impacts to the resource area resulting from installation and use of the driveway were not.
The Commission also concluded that alternative access to the property via 83 Six Penny Lane was entirely feasible, using a combined septic system. The Commission further concluded that this access would eliminate the negative impact to the wetland caused by the driveway in the original proposal. Because the drive is a use not currently realized on the property, the Commission concluded that it would displace a valuable buffer zone. Consequently, the use of the proposed driveway would continue to indirectly contribute to a reduction of the adjacent wetland’s water quality and wildlife habitat value over the long term due to the elimination of the buffer zone’s flood storage and pollutant uptake capabilities inherent in the biomass and undeveloped soils. With the location of the proposed driveway immediately adjacent to the wetland resource area there is little or no potential for storm water and pollutants shedding from the drive to infiltrate prior to discharging to the wetland.
Finally, the Commission concluded the plaintiffs proposed mitigation, a 1.2:1 wetland replication mitigation at a similar elevation for those wetlands impacted by the project and renaturalization of 98 square feet in two areas within the buffer zone, is inadequate to mitigate the direct and indirect wetland impacts resulting from permanent loss of 1,300 square feet of the 50-foot vegetated “no disturb” buffer zone. Specifically, the Commission found that the 50-foot buffer zone is essential to the protection of the resource area under the existing conditions and will be even more valuable to preserving the functions of the resource area if the site is developed. The loss of such vegetated buffer, the infiltration and bioremediation of pollutants will be compromised and over time resulting in a reduction of wetland water quality, flood control, and wildlife habitat values. Loss of the 50-foot vegetated “no disturb” buffer zone, the Commission found, would also result in the loss of vegetation and soil absorption capabilities, resulting in an increase in runoff that would influence hydrology in an area with existing flooding issues.
Based on these conclusions and findings, the Commission ultimately found that the proposed project *585 does not meet the presumptions of the Brewster Wetlands Protection Bylaw. Accordingly, the Commission could not approve the plaintiffs application.
On October 3, 2007, the plaintiff filed a Complaint After Remand, which gives rise to the motion before this Court.

DISCUSSION

Under G.L.c. 249, §4, review in the nature of cer-tiorari is available of judicial or quasi-judicial proceedings where no other form of review is available and review is necessary to correct substantial injury or injustice arising from the proceeding at issue. See Walpole v. Secretary of Executive Office of Environmental Affairs, 405 Mass. 67, 72 (1989); Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). Review pursuant to G.L.c. 249, §4 serves to correct errors in administrative proceedings by judicial review where such oversight is not otherwise provided by statute. Yerardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectman of Randolph, 19 Mass.App.Ct. 296, 300 (1985). The standard of review, therefore, “is to correct substantial errors of law apparent on the record adversely affecting material rights.” Police Commissioner of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999). As a result, judicial review is confined to the record of the proceedings below. Where, as here, the administrative agency is limited by narrow and objective criteria, judicial review becomes an assessment of the strength of the evidence supporting the agency’s action. See Mayor of Revere v. Civil Service Commission, 30 Mass.App.Ct. 315, 322 (1991). Action not supported by substantial evidence, or evidence that a reasonable mind would accept as adequate to support a conclusion, is arbitrary and capricious.
As discussed above, the Commission denied the plaintiffs application, based on its findings that alternative access to Lot 9 via 83 Six Penny Lane is entirely feasible and that plaintiffs proposed mitigation is inadequate to mitigate the direct and indirect wetland impacts resulting from permanent loss of 1,300 square feet of the 50-foot vegetated “no disturb” buffer zone.
With respect to the first of these two findings, this Court is not convinced that alternative access to Lot 9 via 83 Six Penny Lane is feasible. In fact, the Commission’s finding that alternative access to Lot 9 is feasible is not supported by substantial evidence. The Commission found a possible alternative access, but not a feasible alternative access to Lot 9. That which may or can be, is possible; that which is capable of being done, is feasible. Reasonableness must be implied in an analysis of what is feasible.[1] In order to effect the Commission’s possible alternative access to Lot 9, the plaintiff would have to reconfigure 83 Six Penny Lane, which would likely decrease his present use and enjoyment of the property. The cost of such reconfiguration, approximately $30,000, is an objectively great expense. Requiring such expense of the plaintiff, in addition to his effort and energy, borders on waste. The Commission’s finding that there is alternative access, here, is a classic ipse dixit. This Court is concerned that the Commission did not give due consideration to the relative costs of alternative access. The Court is further concerned that the Commission did not give due consideration to the impact that alternative access would impose upon 83 Six Penny Lane, severable and separately owned land.[2] Where there is no support discoverable in the record to support the feasibility, not the possibility, of the Commission’s alternative access to Lot 9, it is not supported by substantial evidence. The Commission’s claim that plaintiff did not submit an alternative is unfounded, as it set forth reasons why there existed no feasible plan. Accordingly, the Commission’s finding that there is alternative access to Lot 9 is arbitraiy and capricious. See Fieldstone Meadows Dev. Corp. v. Conservation Comm. of Andover, 62 Mass.App.Ct. 265, 268-69 (2004).
With respect to the second of the Commission’s two findings, this Court finds support in the record regarding the Commission’s policy of imposing upon an applicant a 2:1 mitigation ratio. Plaintiff argues that the absence of a written policy renders the practice of a 2:1 ratio unlawful. It is undisputed that the Commission has imposed this ratio upon applicants before, and plaintiff has not challenged the uniformity with which it has been applied. Where, as here, such a policy has not been reduced to writing, it invites consideration that it is arbitraiy and capricious. Fieldstone Meadows Dev. Corp. v. Conservation Comm. of Andover, supra at 268. On the record before it, this Court declines to make such a judicial determination.
As section 5:01 of the Brewster Wetlands Regulations requires the landowner seeking a variance to satisfy all the enumerated requirements, the Commission’s findings of inadequate mitigation to the adverse impact of the project, supports its denial of plaintiffs application.

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiff s Motion for Judgment on the Pleadings be DENIED, and defendant’s Motion for Judgment on the Pleadings be ALLOWED.
By the Court

Section 5.01 of the Brewster Wetlands Regulations (b) directs the Conservation Commission to determine whether reasonable alternatives exist for such a project within the proposed site.

While the applicant is owner of both Lot 9 and 83 Six Penny Lane, he owns 83 Six Penny Lane jointly with his wife. It is arrogant and somewhat anachronistic to assume that the applicant’s wife’s acquiescence to any diminution of her interest of her residence on 83 Six Penny Lane would be unhesitantly forthcoming.